United States District Court
Southern District

Plaintiffs: Christopher McNeal, Cameron Belk Sr., Todd Willis,
Demetrius Blue, Kourtney Jackson, Roderick Whittaker,
Christopher Warlock, Michael Mosley, Paul Donley,
Steven R. Marshall, Leonard Warren, Gloyd Stell,     Case No. } 21-142-SPM
Shawn LaFollette, Amos Winters, Terrell Amerson,
Robert Sullivan, Randall Putman, Delano Martin,
Morten Licker, Randy Miller, Randy Haley, Basilio Rosales-Cortez,
Jose A. Mejia-Gutierrez, Jestine Myers,

VS.

Defendants: Sheriff Richard Watson, St. Clair Co. Jail, Jail Sup. Tammi Grime, Keefe Group,
Jail Asst. Sup. Shan Collins, Wexford Health Sources INC, David Marcowitz MD,
C.O. Herdon, Lt. Struberg, Securus Technologies, Lt. Penier, Lt. Dujnak,
Sgt. Nichols, Sgt. Messy, Sgt. Scott, Sgt. Moore, Marcie Warner RN, Sgt. Green,
C.O. Kemf, C.O. Brown, C.O. Liebig, C.O. Smith, C.O. Everette, C.O. Owens,
Dennis P. Lawson MD, C.O. B. Johnson, C.O. Tharpe, C.O. Futrell, Rodney Wilson,
C.O. Sobo, C.O. Simms, C.O. Reed, C.O. Wilburn, C.O. Lazante, C.O. Knyff,
C.O. Zerohebak, C.O. T. Johnson, Sgt. Chambers, Aramark Correctional Ser, C.O. JP,
States Attorney Jim Gomric, Edwin R. Bowen (IDOC), Mark Kern, C.O. Stroud,
Nurse Sherri, Nurse Melody Murry, Jail Maintenance Forman, Nurse Shannon,
Mary Rodinson-Davis, Nurse Ashley, Nurse Yvonne, Nurse Jennifer, Nurse Morris,
C.O. Casey, C.O. Humphries, Janice MacCarron, Janelle Bloodworth, Floyd Higgins,
C.O. Garner, St. Clair Co. Health Inspector, St. Clair Co. Health Dept. C.O. Walt,
C.O. Mike Ripperda, C.O. Cruz, Judge O'Gara, Judge Haida, C.O. Fordson,
Nurse Kate, C.O. Rivera, Nurse Debra Hale, Nurse Lastella, C.O. Becker,
C.O. Briggs, C.O. Germaine.

(In their individual and official capacities)
Lawsuit and Motion for Injunctive Relief
Plaintiffs bring lawsuit under 42 U.S.C. § 1983

VERIFIED COMPLAINT

1). Plaintiffs, prose for cause of action against defendants allege that: The Plaintiffs resided in Illinois, and Defendants were employed in Illinois, and the act complained of occurred exclusively in St. Clair County, Illinois

2). Plaintiffs are/were at all times relevant to claims here in were residing in the City of Belleville, St. Clair Co., State of Illinois, under the care, custody and control of Defendants.

3). Defendants, St. Clair Co., through defendant Sheriff Richard Watson, its Dept. of Corrections, its directors, and its employees, owns and operates the St. Clair Co. Jail currently responsible for Contracting/sub Contracting/ employing defendants while additionally being responsible for Care, custody, and control of Plaintiffs.

4). Pursuant to legal Governmental and Governmental Employees Tort Immunity Act 745 ILCS 10/1-101 et seq. at all pertinent times, All Defendants, were acting in the course and scope of their employment. 745 ILCS 10/1-101 only grants immunities and defences to public entities and Public employees that are available to any private person; It does not offer "Blanket Immunity" to wrecklessly and wantonly break laws and violate Constitutional and Civils Rights!

## Factual Background

5). Plaintiffs assert that Defendants individually, collectively, and in their offficial capacities have in the past, and currently continue to violate Plaintiffs Constitutional and Civil Rights and not follow Illinois laws, Illinois Administrative Code, Title 20 Corrections, Criminal Justice and Law Enforcement Part 701 County Jail Standards in regards to sections 701.10 Administration, 701.20 Personnel, 701.30 Records, 701.40 Admission Procedures, 701.50 Orientation, 701.70 Classification and Seperation, 701.80 Housing, 701.90 Medical and Mental Health care, 701.100 Clothing, Personal hygiene, grooming, 701.110 Food Services, 701.120, Sanitation, 701.130 Supervison, 701.140 Security, 701.150 Safety, 701.160 Discipline, 701.170 Employment of Detainees, 701.180 Mail Procedures, 701.190 Telephone, 701.200 Visiting, 701.210 Social Service Programs, 701.220 Education, 701.230 Library, 701.240 Religious services, 701.250 Commissary, 701.260 Recreation and Leisure time, and other Human Rights; to include Cruel and unusual, Punishment of pretrial "Detainee on Detainee" assaults, Beatings of Detainees while hand cuffed, use of suicide prevention room as punishment, Threats/Intimidation/Assaults by Correctional officers on detainees,

No access to Emergency Call button after lockdown, Intentional spread of Infectious Disease, Refusal to abate black mold, MISC, 504.830 Grievance Procedures,

## Jurisdiction

5) Plaintiffs assert that the United States District Court Southern District has jurisdiction over this matter as all actions have occurred/ occurring in Belleville, Illinois In St. Clair County, Illinois US District Court Southern District is the Correct venue as Defendants have violated Plaintiffs Rights "under color of State Law". Federal Law 42 USC, § 1983 ("Section 1983") allows us to sue State and city, prison or jail officials and guards if they deprive us of our rights under U.S. Constitution or other Federal laws. Plaintiffs additionally assert that this is the proper jurisdiction and venue to sue Defendants whom will undoubtedly attempt to claim sovereign or qualified immunity to escape valid claims, because defendants can be sued under 11th Amendment violations where Plaintiffs can ask for money damages as well as injunctive relief from countries, cities, and towns for violating their rights.

The 11th Amendment also bars Sovereign Immunity as a defence because Defendants have individually and collectively in their official capacity violated plaintiffs rights to a healthful environment.

Thus, Plaintiffs again assert this is the proper jurisdiction and venue for their valid lawsuit.

## Claim

7) In anticipation that Defendants will ask for dismissal of Plaintiffs valid lawsuit for failure to properly state a claim while knowing Plaintiffs only have minimal use of a poorly working electronic Law Library application that "freezes" often, No physical Law Library, No access to Legal Aid, and are not licensed attorneys; Plaintiffs state the following;

(The handwritten pro se document is to be liberally construed as the court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), A pro se complaint, "however inartfully pleaded" must be held to,

"Less Stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief", ID. at 520-521, quoting, Candy V. Gibson 355 U.S. 41, 45-46 (1957).)

### 8  Administration Section 701,10

8) A). Detainees with mental illness or developmental disabilities aren't identified or managed correctly. They are placed in any open housing unit which invites physical altercations.

B). Jail officers whom are supposed to recieve annual training by or approved by mental health professionals on suicide prevention and mental health issues, use instances when detainees are having mental breakdowns or having suicidal thoughts as an opportunity to punish already mentally impaired detainees.

C). The jail administrator does not prohibit unlawful discrimination and harrassment of detainees on the basis of race, disability, among other matters. In fact by not acting and abating open and rampant harrassment even when it is reported, the jail administrator has encouraged it.

D). County Board Chairman does not parcipate actively in annual jail inspection he signs off on.

### 9  Personnel Section 701,20

9 A). Officers are not awake and alert at all times, on continuous duty in the jail. This has allowed multiple detainees to be assaulted by other detainees, some even assaulted by Mob Action.

B). Jail administration provides a hand picked list of local hand picked lawyers but alternatively refuse to allow yellow page phone books for IL and MO. Attorney Search's. Thus, they are by default recommending their list of Attorney's.

## 10 Records Section 701.30

10 A). In regard to Extraordinary or Unusual Occurrences, the Jail Administrator can not make any recomendations to prevent subsequent occurrences, such as staff assaulting detainees and reports are falsified to reflect that detainee assaulted staff.

B). Sexual Assault and attempted sexual assault victims are badgered and threatened by investigators to alter their stories.

C). Detainees reporting of contagious or infectious disease or illness are widely ignored!

D). Excessive use of force is widely not reported as officers many times assault detainees off-camera.

E). Jail staff use and discharge electro-muscular disruption devices wrecklessly and unneecesarily.

F). Detainees are held in pretrial confinement for longer that speedy trial limitations if they can't afford bond, some are held in Pretrial confinement for years which violates Due Process Laws.

## 11 Admission Procedures Section 701.40

11 A).  strip searchs arent performed in an area that ensures privacy and dignity of the individual. Individuals are exposed to the view of others who are not specifically involved in the process.

B).  Medication is not processed in accordance with sub section (j)&(e).

C). Personal property released to a third party without detainees authorizing signature.

D) Detainees that show signs of or reports unusual physical or mental distress are not referred to healthcare personnel as soon as possible.

E). Medication in the possession of a detainee at admission is withheld too long. Medical staff does not obtain prescription verification as soon as possible, and certainly not later than the time interval specified for administration of the medication on the prescription container.

F). Detainees are not checked for high temperature or body pests.

G). Treatment is not directed by facility physician immediately when body pests are detected such as body Lice, etc.

H). All detainees do not shower when admitted.

I). Jail staff assign detainees to cell assignments knowing they are at risk of harm from violent detainees.

J). Many detainees are rushed to housing unit with no wrist band or pin Number.

K). The jail has unconstitutionally attached a $50.00 booking fee to the already excessive bonds.

L). Detainees who inform Jail staff of food diets or food allergies are dismissed and told to talk to medical staff during medical screening which may take weeks.

## 12. Orientation Section 701.50

12 A). Detainees do not recieve orientation information on rising and retiving, meals, mail procedures, electronic mail, work assignments, telephone privileges, visiting, correspondence, commissary, and medical care.

B). Detainees do not recieve orientation on rules of conduct, or Disciplinary Procedures.

C). Detainees do not recieve orientation on information regarding work, education, and vocational training programs, counseling or any social services.

1) Detainees do not recieve orientation on procedures for making requests or entering complaints to the jail staff, judiciary or unit personnel.

## 13  Housing Section 701.80

13 A). Detainee's housed in dormitory spaces do not have at least 50 square feet of floor space provided per occupant.

B). A shower with piped hot and cold water is not provided for every eight occupants.

C). Cell blocks are consistantly grossly over crowded and detainees sleep directly on the floor with no cots.

D). There is not enough space at dayroom tables for all detainees to sit at meal times, several detainees have to eat at their bunks in the sleeping area, or stand to eat due to constant overcrowding.

E). 22 men housed in I-Block, a 16 man dormitory.

F). Detention areas are not comfortably heated and cooled according to the season with a system designed to eliminate disagreeable odors and to routinely provide temperatures within the normal comfort zone.

## 14  Medical and Mental Healthcare Section 701.90

14 A). Treatment of ailments is minimally available.

B). Special diets are not adhered to as prescribed by physicians.

C). Environmental health inspections are "Rubber-Stamped" as sewer gnat infestation, unsanitary bacteria infected gnats (bedding), Moldy, dirty, clogged ventilation system, and black mold infestation have existed for several years.

D). Jail staff and Wexford Health Services staff alter detainee medical records.

E). When a physician or other medical personnel attend patients at the facility, a jail officer is present to maintain order but frequently violate HIPPA laws by commenting on medical issues while patients are being assessed.

F). Correctional officers are allowed by Wexford Health Services staff to violate detainees HIPPA rights by allowing officers to write down detainees blood pressure when nurses take them and intervening in medical care conversations.

G). Detainees are refused prescribed physical therapy.

H). Wexford Health Services and Jail staff show medical indifference towards detainees by depriving detainees of medical and mental care, deny detainees to inspect or have copies of his/her medical records.

I). Detainees are deprived adequate mental and medical care.

J). Wexford Health Services staff as mandated reporters do not report Jail staff assaults on detainees.

K). Suicidal Detainees are punished with "Quiet Room" (clothing removed, cold, no blanket, toiletries).

### 15 Food Services Section 701.110

15A). Food is not of sufficient nutritional value and does not provide a minimum of 1,800 to 2,000 Calories.

B). Food quantity is not sufficient to satisfy, within reason, the detainee's needs, and is salty and ½ cooked often.

C). Water is frequently served with meals and drink cambros are poorly cleaned.

D). The menu is not diversified and is a monotonized standardized diet.

E). Detainees are not properly screened by medical staff prior to commencing work in food service areas.

F). Trays are not cleaned and dried properly. Food is piled on top of standing water.

G). Dietary trays are served cold and ½ cooked.

H). Detainees who file lawsuits or grievances on Jail staff are denied Hot tray meals.

## 16 Sanitation Section 701.120

16 A). Cleaning supplies to include detergent or germicidal agents to clean floors, toilets, showers, and food service areas are not provided daily.

B). Mops and brooms aren't cleaned between use.

C). Electrostatic cleaning is performed haphazzardly with very diluted ratio.

D). When detergent and germicidal agent cleaners are provided they are in very small or overly diluted quantities.

E). Mattress covers are not provided.

F). Mattresses are not washed with hot water, detergent and disinfectant monthly.

G). Gym, old law library, barbershop are often dirty and unsanitized when detainees are moved there.

## 17 Recreation and Leisure Time Section 701.260

17 A). The exercise area is not appropriately equipped as the only only equipment provided to detainees is one basketball.

B). Detainees are not allowed in the exercise area for at least 1 hour daily.

C). Recreation and leisure time activities are not planned and scheduled. Recreation occurred on rare occlassions, even outside of the Covid-19 Pandemic.

D). Detainees are not allowed outdoor recreation at all, as annual Inspection Report for the jail falsely states.

E). Detainees are punished with day after day of idle time.

F). Detainees have a 19" Television that they have to watch between bars.

G). Detainees do not have a microwave and have to cook commissary food with warm shower water.

H). Detainees have no library available at all, let alone one that includes up-to-date informational, recreational, legal, and education resources as Illinois Administrative Code 701.230 mandates.

I). Detainees (Pretrial) are confined to cell blocks 24 hours per day.

18   Employment of Detainees Section 701.170

18 A). Trustees have to work 9-12 hours per day with no pay just to be relieved from 24 hour lockdown. Detainees in the local metropolitan area are alternatively paid for labor. Labor at this jail ammounts to involuntary servitude (Slavery).

B). Detainees have to be subjected to being demeaned to maintain kitchen worker/trustee status.

## 19 Religious Services Section 701.240

19 A). Religious services are largely unavailable (even prior to Covid-19 pandemic)

## 20 Education Section 701.220

20 A). Education Opportunities are largely unavailable (Even prior to Covid-19 Pandemic).

## 21 Social Service Programs Section 701.210

21 A). Social Service Programs are largely unavailable (even prior to Covid-19 Pandemic).

## 22 Library Section 701.230

22 A). No physical Law Library Frustrating access to Courts.

B). Detainee's only offered sluggish, poorly functioning electronic law library application on Kiosk holding several other applications.

C). kiosk down for maintenance often.

D). There is absolutely no privacy when using the Law Library application.

E). No Legal Aid offered to pretrial detainees.

F). Detainees entire Legal Documents are read before Notary's stamp them.

G). Jail Staff refuse to allow detainees to be present while legal files are copied, even when legal files contain litigation against Jail Staff.

H). Jail Staff ignores ADA (Americans with Disabilities Act) complaints and requests for adequate Law Library kiosk accessibility.

## 23  Mail Procedures Section 701.180

23 A). Mail is not delivered promptly to include legal mail to detainees.

B). Detainees are not notified when outgoing mail is being with held.

C). Detainees and sender are not notified when portions of a letter / package are prohibited in writing.

D). Incoming mail clearly marked "Privileged" is opened out of the presence of detainees. Legal mail is not zealously safeguarded as mandated in Campbell vs. Miller 787 F 2d 217, 225 n. 14 (7th Cir, 1986).

E). Detainees electronic mail privileges when on disciplinary restriction is denied.

F). Detainees whom file lawsuits against jail staffs subsequently have mail opened, delayed, dissapear.

G). Jail staffs delaying of mail interferes with Attorney Client relationship.

## 24  Telephone  Section 701.190

24 A). There is no notice stating telephone calls may be monitored or recorded posted by each telephone from which detainees may place calls.

B). Detainees can not make all calls in emergencies.

## 25  Visiting Section 701.200

25 A). There is no area provided to ensure privacy during visit.

B). Detainees are denied visits by illegal secondary punishment.

## 26 Commissary Section 701.250

26 A). Detainees are charged prices which are not consistent with local community store prices.

B). Net profits of the Commissary system which also includes E-Cigarettes, Commissary Purchases, and telephone access service and electronic mail access services are not used primarily for detainee education and recreation.

C). Jail staff is diverting and illegally missappropriating Commissary funds.

D). Jail staff charges excessive "site fee", (Kick backs) which force detainees to pay astronomical phone charges which deny many detainees opportunity to contact family and outside world... local calls $4.59 connection fee, plus taxes and .59 per minute plus taxes. Long distance calls .21 connection fee, plus taxes and .21 per minutes plus taxes.

E). Clothing items purchased on Commissary are very expensive but are of very poor quality.

## 27 Disipline Section 701.160

27 A). Detainees are not allowed to make requests or complaints to the jail administrator in written form without Cencorship of substance.

B). Detainees are not informed that they are permitted to submit complaints to the Jail and Detention Standards Unit.

C). Detainees are routinely denied Grievance forms.

D) Someone other than the reporting officer does not conduct any meaningful investigation on major rule violations.

E). Secondary punishments are routinely imposed on other detainees.

F). Segregation is used for any violation.

G). Corporal punishment and beatings are routinely administered to detainees.

H). Restraint devices are used for punishment of detainees.

I). Detainees are refused showers and daily exercise while in maximum housing.

J). Hearings for major violations are similar to a "kangaroo Court".

K). Detainee's are not allowed to call witnesses to disciplinary hearings.

L). Pretrial Detainees are punished with no Due Process or Representation.

M). Guards do not video record disturbances or cell extractions.

N). Guards do not wear body cameras.

O). Jail staff frequently use illegal 72 hour lockdown practice's for fights.

P). Discretion for length of punishment for rule violations is grossly abused.

## 28 Safety Section 701.150

28 A). Detainees are not prohibited from engaging in wrestling, horseplay or other activity likely to cause injury.

B). Guards do not respond to a great number of fights.

C). When guards respond to fights, the aggressor(s) are often left in cell blocks to repeat offenses, while removing victim(s).

D). Guards do not investigate fights.

E). Detainees are locked away from Emergency Call Button at night when most fights/attacks occur.

## 29 Clothing, Personal Hygiene, and Grooming Section 701.100

29 A). Clothing is washed at least twice weekly, but naked men have to wrap in sheets or blankets until laundry is returned.

B). Detainees without funds are not provided deodorant.

C). Detainees are not allowed personal battery operated grooming devices if cheap supplied razors irritate skin e.g. African Americans develop severe razor bumps (Need for daily use).

D). Detainees are only supplied 1 pair of socks, 1 pair of underwear, and 1 uniform, leaving them clotheless on laundry days.

E). Detainees do not have access to personal fingernail and toenail clippers and have to share clippers which are not properly sanitized with the entire facility potentially spreading germs.

F). Bleach is rarely used on white laundry.

G). Adequate grooming tools are not provided in barber shop.

## 30 Supervision Section 701.130

30 A). Dormitories housing more than 25 detainees are not under continuous observation.

B). Detainees are not prohibited from having control or authority over other detainees.

C). Detainees are hired by staff to assault or perform "planned" mob action on other detainees.

D). Jail supervisory staff does not have an adequate preventive maintenance program or adequate jail inspection program.

E). Jail superintendant and Assistant Jail superintendant do not perform walk throughs and speak to detainees in cell blocks.

F). Maintenance staff ignores detainee requests for repairs. Eg. light out at shaving sink for 2 months.

G). Volatile detainees are escorted by shirt supervisors

H). Shift supervisors refuse to report to cell blocks when detainees try to avoid contren tations.

I). Guards refuse to alert supervisors when they can't/won't handle detainee issues.

J). Supervisors and staff tell detainees "Don't come to jail if you don't want your rights violated."

K) Supervisors initiate harrass ment of detainees.

L). Supervisors escalate violent situations rather than de-escalate.

## 3) Grievance Section 504.830 (Procedures)

3) A). Jail staff routinely deny detainee complaint forms.

B). Jail staff systemically obscure the grievance process with poor answers and deception, which equates to torturous interference.

C). Jail staff frequently/systemically don't reply to complaints.

D). Jail staff discard detainee complaints with no consequence.

E). When detainee's complain on jail staff and direct complaint to Assistant Superintendant or Jail Superintendent, or complaints,

are either intercepted or delivered to the staff member that detainee originally complained on, with no follow up by Assistant Superintendent or Jail Superintendent, leaving detainees open to staff retaliation.

F). Jail staff systemically deny detainees Grievance forms

G). Grievance procedure is ladened with double talk and blatant attempts to confuse and ensure detainees can recieve no relief from the procedure.

H). Grievance forms are not returned to detainees within 3 days with answers as Jail Grievance policy dictates.

I). Complaints to kitchen supervisors about food services are very rarely replied to.

J). St. Clair Co. Jail has a cumbersome, cunning, and onerous Grievance procedure which requires detainees to submit grievance in writing to Shift supervisor within 24 hours after he/she learns of circumstances or conditions which prompted the grievance. Alternatively, Illinois Administrative Code title 20. Corrections, Criminal Justice, and Law Enforcement Part 504 Discipline and Grievances subpart F. Grievance Procedures for offenders 504.810 Filing of Grievances; allows even prisoners 60 days after discovery of incident, occurrence or problem that gives rise to the grievance to report the incident from with they seek relief from.

## 32  Human Rights

32 A). Jail staff use excessive use of force routinely on detainees without regard for detainee safety.

B). Jail staff routinely assault detainees.

C). Jail staff routinely verbally assault detainees.

D), Jail staff beat detainees while they are handcuffed.

E). Jail staff systemically use threats/intimidation to deter detainees from filing complaints, grievances, lawsuits.

F). Jail staff use systemically entrenched retaliation against detainees who file complaints, grievances, lawsuits.

G). Jail staff routinely discriminate against detainees for crime, race, etc.

H). Jail staff refuse to adjust toilet/sink timers, leaving detainees without drinking water or water to wash hands for 30 minutes approx. Additionally toilets lock up for up to 1 hour full of urine and or feces that detainees have to smell in tight, poorly ventilated quarters after 3 pushes of the toilet flusher.

I). Jail staff refuse to wear masks correctly, subjecting detainees to Covid-19 infection.

J). Jail staff house known asymptomatic detainees with other detainees, knowing that the person could infect others with Covid-19.

K). Jail staff routinely engage in Cruel and Unusual Punishment.

L). Jail Administrator, Assistant Jail Administrator, and Sheriff, allowed "Orange Crush" to use excessive force and to strip search pretrial detainees as a training exercise on 8/15-19. Neither the Assistant Jail Administrator, Jail Administrator, or either Jail and Detention Standards Unit Manager have answered or addressed Detainee Grievances.

M). Staff violate the Prison Rape Elimination Act (PREA) at the direction of Supervisors by watching detainees use the toilet and forcing detainees to watch each other use the toilet.

## 33) Security Section 701.140

33 A). Some searches are not random and are used to read detainees legal files and harrass detainees who file litigation against defendants.

33 b). Jail Staff removes detainees property during block searches but leave no reciept as to what was taken, why it was taken and a printed and signed officers name and badge number who removed detainees property.

34). St. Clair Co, Jail (SCCJ) staffs wanton, wreckless disregard for Illinois law, Administrative Code, their own policies, guaranteed Constitutional, Civil, and Human Rights along with jail staffs disregard for well-being of pretrial Detainees (PTD's) and the systemically entrenched treatment of said PTDs as persons whom have been convicted of crimes, (Prisoners) has transformed SCCJ, (A state and Federal) pretrial holding facility) into a full-fledged concentration camp where PTD's are often informed that they have no rights by jail staff and that, "You shouldn't come to jail) if you don't like it," or "Bond out if you don't like it!" This is an outright violation of indigent and non-indigent detainees rights and violates Due Process Laws under the 6th Amendment of the U.S. Constitution.

Additionally, the well orchestrated plan of the SCCJ staff to obscure, destroy, and refuse complaint/grievance forms to grieving detainees has for years caused detainees to be without relief in that they can't prove he/she has exhausted all administrative remedies. Thus, Courts have "unknowingly", dismissed cases for years, for failure to exhaust available administrative remedies! Defendants also have an entrenched system of opening, destroying, delaying incoming and outgoing legal mail) to intentionally exhaust PTD's relief attempts and have cases dismissed for failing to file a timely response.

These huge deceptive hurdles alongside the defendants unconstitutional denial of access to the courts by it's shrewd removal of the physical law library, no legal aid available, and installation of a poorly functioning law library computer application that freezes often, ensures that PTD's can't properly research law and present claims formatted correctly and acceptable to the courts!

Thus, ensuring grieving detainees are left at an unfair advantage while defendants enjoy a well-planned insidious advantage!

35). Plaintiffs also cite 5th, 8th, 9th, and 14th Amendments violations of the United States Constitution by defendants. Petitioner are

seeking a Motion for Injuctive Relief, Temporary Restraining Order which will blossom into a Permanent Restraining order and closure of St. Clair Co Jail due to Jail staffs gross negligence, wreckless endangerment, deliberate indifference, cruel and unusual punishment, outright refusal to properly wear PPE, refusal to properly sanitize rooms etc. where detainees are moved, failure to properly follow CDC guidelines and quarantine incoming detainees, failure to issue detainees PPE (eg. masks, hand sanitizer), overcrowding of jail during a Pandemic, accepting detainees from other counties who've refused intake due to Covid-19 knowing Covid-19 was already present in St. Clair Co. Jail, Refusal of medical treatment, etc, causing them to become infected with Covid-19 and suffer painful symptomatic side effects of the virus which could lead to mortality or life long morbidity issues (eg. permanent lung damage).

Defendants additionally have largely denied plaintiffs access to any physicians at local hospitals, and facility physician Dr. Marcowitz has refused to see detainees during quarantine showing extreme indifference.

Defendants turned a pretrial detainee facility in the United States of America into a full-fledged "Death Camp"! Also, knowing that there are now variants to the Corona Virus such as the U.K. variant and S. African variant which have a higher mortality rate!

Also, disregarding the fact that all variants effect the African american and Hispanic population the most, (which is the jails largest population) due to entrenched symptomatic racism!

The plaintiffs cite the following: U.S. Constitutional Amendments which Defendants violated.

## 5th Rights of Persons

No person shall be... nor be deprived of life liberty or property without due process of law...

## 8th Further Guarantees in Criminal Cases

Excessive bail shall not required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

## 9th Unenumerated Rights

The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

Rights guaranteed; Privileges and immunities of Citizenship Due process, and Equal Protection.

Section 1 - All persons.... Nor shall any state deprive any person of life, Liberty, or property, without Due Process of Law.

1). In that all defendants partially or wholistically know of, willfully ignored plaintiffs pleas for medical help, failed to properly wear PPE, failed to prevent spread of Covid, failed to properly sanitize facility, failed to insure health and safety of those in their custody, disregarded consequences of jail overcrowding, failed to meet nutrition requirements in meals, failed to devise a viable Covid-19 prevention plan, failed to release high risk detainees with underlying serious health issues, thus playing an integral role in the spread of the Covid-19 Corona Virus where by causing plaintiffs to become infected and test positive on 7-30-2020, violating plaintiffs 5th Amendment Rights under the United States Constitution.

2). States Attorney Jim Gomric, Assistant States Attorney Bernadette Schrempp, Judge O'Gara, Judge Haida, Sheriff Watson, St. Clair Co. Fire Marshall have all conspired in a well orchestrated, long entrenched plan to impose excessive bails to ensure a high daily Census count at St. Clair Co. Jail; failed to abate this cruel devised plan even in the midst of a worldwide Covid-19 deadly pandemic; Continued in their colluded illegal practice of attaching defacto bail requirements of ankle monitoring/GPS tracking by falsely through an extreme lack of candor, labeling nearly all detainees as flight risks or as dangerous with no evidence of either, forcing indigent detainees to endure "normal" cruel and unusual punishment at the violence ladened, black mold infested jail where they are confined as pretrial detainees to a cell block 24 hours per day 7 days per week with very rare recreation/ activities even outside a pandemic. Plaintiffs complained to defendants of great risk of contracting Covid-19, even though defendants know that Covid-19 being contracted could result in mortality or life long morbidity they failed to deter from their nefarious colluded scheme defendants additionally were aware that CDC has listed jails/prisons as a "hot spot" for Covid-19 Corona Virus growth but ignored that fact and not only exceeded the jails fire code population

by 100 plus "human being" pretrial Detainees, and accepting detainees from other jails whom responsibly declined to accept detainees from other jails due to the Covid-19 Pandemic, increasing Plaintiffs likelihood of being infected in a grossly over crowded jail, all in the name of profits for the county, thus causing Plaintiffs to become infected by Novel Covid-19 Corona virus amounting to Cruel and unusual punishment of pretrial detainees which violates plaintiffs 8th Amendment Right under the U.S. Constitution!

3). C.O. Kempf, C.O. JP, Nurse Melody Murry, Nurse Marcie Warner, Nurse Yvonne, Nurse Susan, C.O. Germaine, Sgt. Nichols, Sgt. Scott, Sgt. Green, Sgt. Messey, Dr. Marcowitz, Sgt. Moore, Capt. Collins, Major Grime, sheriff Rick watson, Avamark, Wexford Health Services, Nurse Shannon, Nurse Sheri, St. Clair Co. Health inspector, C.O. thorpe, St. Clair Co. Fire Marshall, States Attorney Jim Gomric, Assistant States Attorney Bernadette Schvempp, Judge Haida, Judge R. O'Gara, St. Clair Co. Jail, C.O. B. Johnson, C.O. Everett, Sgt. Bujnak.

On several dates, times have all made statements which either disparaged plaintiffs, denied plaintiffs guaranteed rights, or through disparaging comments in the official grievance process, refusal to answer complaints/grievances, refusal to provide complaint forms in a timely manner, refusal to answer complaints/grievances appropriately, Flat out denial of complaint forms intimidation, threats, prolonged pretrial detention, denial of sanitation materials during a pandemic, Medical Indifference, Inadequate precautions to prevent the spread of the novel Covid-19 Corona virus, refusal to correctly wear PPE or at all, Refusal to provide a safe and sanitary environment, refusal to enforce fire code, refusal to act, refusal to inspect facility In the midst of a pandemic, refusal to answer or ignoring of court motions, refusal to provide adequate vitamins in diet to strengthen immune systems, several meals inhumanely slopped in trays, etc. which amounts to egregious violations of rights guaranteed under the 9th Amendment of the U.S. Constitution.

4). Sheriff Rick Watson, St. Clair Co. Jail, Major Tammi Grime, Capt. Shan Collins, wexford Health services, et al. through their collaborative actions of treating Pretrial Detainees as not only convicted prisoners, but less than human, have intentionally created a system and environment which are

inherent in a prison environment to the point that it has become normal to overcrowd dorms (eg. 20 persons housed consistantly in a 16 person dorm, and it has become normal to overcrowd the jail to the point that detainees sleep directly on the floor with their mats inhumanely with no cots even during a pandemic) Enhanced inherent conditions to the point that it has become normal for detainees to not have access to water or toilets for up to 30 minutes several times daily. Plaintiffs, whom tested positive for Covid-19 Corona Virus on 7-30-20 were not seen by a physician as of 8-10-20 and felt if they were simply placed in a room to die, Meals fed to detainees slopped on trays to the point with no relief from several complaints/grievances that Plaintiffs engaged in a hunger strike from 8-4-20 thru 8-6-20 (see evidence labeled exhibit #1) Plaintiff, Detainee Cameron Belk Sr. filed a grievance at 1:07pm on 8-6-20 informing Capt. Collins again that "I-Block" was participating in a Hunger Strike for reasons outlined in Court (Exhibit #1), and that he had alerted his family as well as Attorneys of Hunger Strike and the reasons behind it which defendants had failed to reply to. Capt. Shan Collins and Superintendant Tammi Grime misteriously appeared at "I-Block" at approximately 2:25pm on 8-6-20 and quasi-listened to detainees complaints, but largely ignored Plaintiff Belk to the point that Belk had to call Major Grimes name 5 times in an almost silent room before she replied and she was only 6 feet away! Belk had to similarly call Capt. Collins name 3 times before he answered! It was made clear to all detainees that Super. Grime and Capt. Collins were showing intentional extreme indifference toward Plaintiff Detainee Belk due to his current litigation in Federal Case 3:19-CV-00499, Superintendant Tammi Grime and Assistant Superintendant Shan Collins promised to address hunger strike issues and Plaintiffs ended hunger strike at 2:45pm on 8-6-20. Plaintiffs also alerted Captain Collins that they had requested to see him or Major Tammi Grime for 10 days and they failed to come for any Captains Call! Captain Collins replied with extreme indifference and singled out Plaintiff Belk and stated, "we're not at your beckon call Belk." Plaintiff Belk informed Captain Collins that he and Major Grime were obscuring the established Grievance Procedure by ignoring Captains Call! Captain Collins replied, "We don't have to show up in person!" Plaintiff Belk replied "Yes you do!".

These acts of abuse of power, coupled with all the aforementioned claims amount to cruel and unusual punishment of pre-trial detainees and detainees, which violates and disregards guaranteed rights, equal protection, and Due Process, thus violating egregiously Plaintiffs 14th Amendment Rights.

Sheriff Richard Watson states in the St. Clair Co. Jail Detainee Rules and Regulations handbook, "I intend that you benefit from a safe and sanitary environment while detained in the St. Clair Co. Jail. Not only has Sheriff Richard Watson failed as the top jail official to provide a safe and sanitary environment, he has for several years discarded/disregarded several staff on detainee assaults, black mold which the jail is infested with (even after numerous lawsuits) and now due to gross + egregious intentional negligence of staff, allowed Covid-19 to spread at alarming rates within the confines of the St. Clair Co. Jail! Sheriff Watson hasn't devised nor enacted any viable plan to abate the Covid-19 Novel Corona Virus either (eg.) Nursing staff have taken the approach as Nurse Administrator Marcie Warner who has quarantined 11 detainees in a 443.25 sq ft sleeping area which 20 detainees were confined to a week prior to quarantine, but area is designed for 16 detainees. The additional detainees slept on the floor, (Two) with no cots as the jail was significantly overcrowded 55 plus over five code! Administrator Marcie Warner in collaboration w/ Sheriff Watson have gone directly against CDC guidelines and not guaranteed detainees in a manner to give them an opportunity to "survive" the Corona virus outbreak which is due to thier gross negligence! They did not seperate detainees at all, no social distancing, but alternatively left 11 detainees who've tested positive in a 443.25 sq. ft. sleeping area which is poorly ventilated, in humanely cold temperatures, mold infested dirty + clogged vents + cold air returns. All detainees are at different stages of symptomatic illness after Contracting the virus in the jail we were confined to "I-Block" 24 hours per day, 7 days per week.

Detainees are now informed by Nurse Admin Nancy Warner that after 10 days we would be all taken off Quarantine and other detainees would be moved back into the block. This would occur without any of us 11 now positive detainees being re-tested to insure we are negative! On 7-27-20 at 2:30 pm after we were informed by Sgt. Nichols that a fellow detainee Lloyd Tutor whom was very ill tested positive for Corona Virus, that we all had to to be tested! On the same date at 2:30 pm Nurse Shannon and Nurse Ashley did Corona Virus.

nasal swab tests on all 18 "I-Block" detainees! On the same date 7-27-20 at 11:00 pm C.O. Owens came into "I-Block" and assaulted Pretrial Detainee Terroll Amerson! As detainee Amerson was explaining to C.O. Futroll that other shifts had been leaving the gate open because water was timing out and locking up too often with so many detainees in the overcrowded block! C.O. Owens interrupted even though it wasn't his block and said lockdown! Everyone else was already in the sleeping area that was supposed to be, detainee Amerson put a tooth paste cap in between the gate closure. C.O. Owens observed that the gate didn't close all the way, C.O. Owens then came into the block and removed the tooth paste cap that was blocking the gate between the dayroom and sleeping quarters! He stated "Anyone want to speak up and claim responsibility for this?" No one responded. C.O. Owens replied, "OK!". He had the gate between the dayroom and sleeping quarters closed by C.O. Ike and had exited the dayroom and was standing in the "I-Block" foyer. C.O. Owens whom is about 6'6" and weighs approximately 400 lbs sweats alot while performing twice hourly cell block checks, Detainee Amerson proclaimed, "Sweaty Booty Ass!" C.O. Owens said "What did you say?" Detainee Amerson re-stated, "Sweaty Booty Ass!" Rather than C.O. Owens just walking out of the block and de-escalating the situation, he decided to have a testosterone overload and escalate the situation. C.O. Owens instructed C.O. Ike to re-open both gates and stated to detainee Amerson "Bring your bitch ass out here!" When the gate between the dayroom and sleeping quarters opened C.O. Owens grabbed and assaulted detainee Amerson with an Illegal neck choke restraint. As Amerson wrestled to get free of C.O. Owens whom out weighed him by 150 pounds and towered over him, they fell and rolled into detainees Bdks knee (right) whom was standing out of the way at his bunk! C.O. Owens was laying on top of detainee Amerson, but Detainee Amerson whom was intent on stopping the assault managed to muster enough strength and began to roll C.O. Owens off of him! When Detainee Amerson managed to free himself from C.O. Owens grip and gain the advantage over the aggressor, he began to pummel C.O. Owens until he was severely dazed! As other C.O.'s began to show up C.O. Futroll came to assist in the assault of detainee Amerson, but detainee Amos Winters intervened and beat C.O. Futroll up as well. When Sgt. Mossy came into the block he shouted no

instructions or commands, but came in and grabbed detainee by the neck in yet another illegal choke hold! While Sgt. Mossey was placing hand cuffs on detainee Amerson's right hand C.O. Owens came over and punched detainee Amerson in the left jaw! Detainee Belk proclaimed you can't punch him while he's getting cuffed! Sgt. Mossey whom was in charge did not say one word to C.O. Owens for assaulting detainee Amerson! Amerson became aggressive again and told Sgt. Mossey he would go with him but to get C.O. Owens away from him! Detainee Amerson was taken outside and made to lay on the floor in the hallway! While all this was occurring C.O. B. Johnson and C.O. Miller had walked in. C.O. B. Johnson was the only officer who gave any verbal commands loudly and they were as follows; 1) He told detainee Leonard Warren who was the only person away from their bunk to return to his bunk! Leonard Warren replied to his command. C.O. B. Johnson then walked by detainee Belk's bunk while he was standing by his bunk out of the way watching detainee Amerson being assaulted by Sgt. Mossey and C.O. Owens! C.O. B. Johnson hit Belk in the chest and said "sit the fuck down!" Belk shouted "you don't put your hands on me fag!" C.O. Ike came over calmed Belk down and said," please just sit down for me." Belk complied. Then as Amos Winters was obeying commands and walking out of the block C.O. B. Johnson attacked him from behind and slammed him against a table in the dayroom and another tussle ensued, Detainee Amos winters was shortly taken into the hallway, laid face down on the floor and hand cuffed. He could be seen in the door way! Several detainees voiced their concerns to Sgt. Moore and Sgt. Mossey and stated they wanted to speak with them about the incident Sgt. Moore and Sgt. Mossey said they would come back and speak to the "eye witnesses" but have failed to do so as of 9-10-20, Several detainees have voiced verbal complaints to Sgt. Moore, Sgt. Mossey, Sgt. Nichols, Sgt. Bajnak, and written complaints/ grievances were sent to Asst. Superintendant Capt. Shan Collins, and superintendant Major Tammi Grime all were replied to in primary fashion by Captain Collins who not only didn't answer complaints directed to him appropriately, but continued in his normal pattern of obscuring the grievance process by intercepting and delaying grievances which were appealed to sup. Grime due to his poor replies and answers! Detainees decided jointly to go on a hunger strike on 8-4-20 due to Asst. Superintendant Shan Collins and Superintendant

Tammi Grime refusal to come to "I-Block" and speak to "I-Block" detainees after they were placed on a secondary punishment lock down during a obfuscatory investigation after a major incident where guards C.O. Owens, Sgt. Messey, and C.O. B. Johnson illegally assaulted detainees, Terrol Amerson, Amos Winters, and Cameron Belk sr.!

Morten Licker, Christopher McNeal, Cameron Belk Sr. and Gloyd Stell all filed official complaints / Grievances to Capt Collins + Major Grime in regard to secondary punishment and additionally commented on guards assaulting detainees! Guards whom were exposed to detainees C.O. Owens, C.O. B. Johnson, Sgt. Messey, C.O. Miller all reported to work the next day (No Quarantine Period) Tuesday July, 28, 20 and again Friday 7-31-20 thru Sunday 8-2-20 possibly infecting hundreds of detainees and Countless staff as 11 of the 18 detainees in our block tested positive for Covid-19 on 7-30-20. On 7-28-20 at 1:05pm Sgt Bujnak came to "I-Block" after several detainees requested to speak to a Sgt. about being on secondary punishment. Detainees Cameron Belk sr., Shawn LaFollette, Robert Sullivan, Morten Licker, Randall Putman, Christopher McNeal, and Victor Hopkins all spoke up and informed Sgt. Bujnak verbally, about guards assaulting detainees and being on secondary punishment. Cameron Belk sr. additionally informed Sgt. Bujnak that he wanted to press charges on C.O. B. Johnson for assaulting him!. Cameron Belk Sr. also informed Sgt. Bujnak that he had a rare paid home visit later that evening during the Covid-19 Pandemic and didn't want to miss it, especially since the facility hasn't allowed "Free of Charge" video visits for several months. Christopher McNeal, Morten Licker, Randall Putman, Victor Hopkins and other detainees informed Sgt. Bujnak of C.O. Owens, Sgt. Messey, and C.O. B. Johnson's assaults on detainees! Sgt. Bujnak said "The incident is under investigation", but no one came to speak to us? Major Grime and Capt. Collins finally appeared at "I-Block" to speak to detainees on 8-6-20 at 2:25pm and hunger strike was ended. ~~[redacted]~~

Plaintiffs assert that this court is the proper venue for their Civil Rights claims because state Court Judges are defendants in this case and current St. Clair Co. States Attorney and Assistant States Attorney are defendants as well! All but inviting "Certain" retaliation. Plaintiff Cameron Belk sr. filed previous civil action in State Court where Judge Heinz Rudolph precided over suit.

In this Civil Action plaintiff Belk pointed out courts extreme animosity for him filing suit as well as courts postponing court dates with the purpose of discouraging suit! Court displayed a reluctance to hear case! Belk even cited Judicial Meandering in state court! Delays were so egregious that Belk filed claims on 6-6-19 on Judge Heinz Rudolph with the Judicial Inquiry Board citing state courts illegal stall tactics!

Plaintiff Belk subsequently filed civil Action in Federal court on 5-7-19 after state court failed to answer Emergency Motion for Medical care. Federal Civil Action is ongoing in case No: 3:19-CV-00499, state court officials reluctance to hear St. Clair Co. Jail detainees claims is deeply entrenched and is additionally pointed out by George L. Most JR. in George L. Most Jr. vs. R. watson no. 20-CV-443-NJR dated 6/30/20, where he points out state court animosity towards detainees that file suits, and profound reluctance to hear motions.

Plaintiffs can point to countless days, events of wreckless endangerment by defendants which contributed to them becoming infected with Covid-19 of which there is no relief leaving plaintiffs in pain and suffering 24 hrs per day with very minimal relief! Sheriff Rick watson and superintendant Major Tammi Grime held a press Conference on Fox 2 local news on 5-19-20 @ 10:12am citing that there had been no positive Covid-19 cases to date in the jail knowing there had been 18 "I-Block" Plaintiffs are currently as of 1-16-20 on Covid-19 Quarantine again for 10 days after several became sick from Corona Virus. No medical care has been rendered, as Dr. Marcowitz refuses to see detainees on Covid-19 quarantine.

In addition to all the aforementioned Intentional and negligent acts, defendants ignored not only CDC guidelines during the Covid-19 Pandemic, but continued to wantonly break Illinois law, all to make a profit by violating ILLinois compiled statutes 410 ILCS 82/1 "Smoke free Illinois Act" and 410 ILCS 82/15 "Smoking in public places, places of employment, and governmental vehicles are prohibited" Sec.15. (Smoking in Public places, places of employment, and governmental vehicles prohibited) No person shall smoke in a public place or in any place of employment or within 15ft of any entrance to a public place or place of employment. No person may smoke in any vehicle owed, leased, or operated by the State or a political subdivision of the state. An owner shall reasonably assure that smoking is prohibited in indoor public places and work places unless specifically exempted

by Section 35 of this Act [410 ILCS 82/35] Exemptions, St. Clair Co. Jail, Sheriff Rick Watson, any of his employees nor agents qualify for Section 35 exemption. Sheriff Rick Watson directed and allowed Superintendant Major Tammi Grime and Assistant Superintendant Shan Collins and their subordinate employees at the jail to sell e-cigarettes to jail detainees resulting in huge profits for the St. Clair Co. Jail. An e-cigarette is a device that simulates a traditional tobacco ciggretto. E-Cigarettes use a battery-operated heating mechanism to convert a cartridge containing glycerin, glycol, natural and artificial flavors, usually nicotine, into a vapor which user inhales as he/she would a traditional cigarette.

The University of California at Riverside published a study in 2013 that stated there were harmful and potentionally harmful chemicals, as well as metal and silicate particles, in e-cigarette aerosols inhaled by users.

E-cigarettes may contain lead soldering for attaching battery, and nickle and chromium on heating element. In May 2016 (10th) FDA execised its discretion and deemed e-cigarettes to be "tobacco products", subject to the set of Federal laws that govern the promotion and marketing of conventional cigarettes. The WHO (world Health Organization) expressed concerns regarding the presence of carcinogens and other toxic chemicals in e-cigarettes in May and July 2013.

Several studies have "detected toxic chemicals" from the vapor produced by e-cigarette smoke, mist, vapor, or aerosol. On January 1, 2008 The Smoke Free Illinois Act (410 ILCS 82/1 to 75) went into effect essentially banning indoor smoking in Illinois, to eliminate health risks associated with indoor exposure to second hand smoke. Knowing that indoor smoking is prohibited that e-cigarettes contain hazardous chemicals, and that second hand smoke/vapor presents numerous health risks to non smokers and others, Sheriff Watson, Jail Superintendant Major Tammi Grime, Assistant Jail Superintendant Shan Collins, and other defendants procured and allowed detainees to purchase e-cigarettes and illegally smoke these tabacco products inside The St. Clair Co. Jail. All e-cigarettes that were/are purchased, were/are smoked indoors as Jail Detainees are confined to cell blocks 24 hours per day and are "NEVER" allowed outdoors recreation. Sheriff Richard Watson, in the St. Clair Co. Jail Detainees Rules and Regulations handbook states, "I intend that you benefit from a safe and sanitary environment while detained in the St. Clair Co. Jail." Sheriff Watson however

lacks any resemblence of candor in his statement, as he is aware of toxic black mold that has existed in the St. Clair Co. Jail for over 10 years. He additionally is aware of the Jails ventilation which is in poor condition due to air ducts and vents not being cleaned and are clogged with several years of dirt, grimo, dust, and black mold leaving detainees suffering from inhumane cold or hot temperatures, and proper respiratory infections/illness.

Sheriff Watson, Jail superintendant Major Tammi Grime, Assistant Jail Super intendant Shan Collins, and entire Correctional staff are aware of the intentional over crowding, eg (22 men or more in a 16 man block) detainees sleeping directly on the floor, wreckless housing of detainees, immediate housing of detainees with no Covid-19 test by Wexford Physician Dr. Marcowitz or Wexford Nurses, in communal housing settings in the midst of a global Covid-19 pandemic. Not only have those conditions could have been prevented in regard to the spreading of Corona virus, deaths in the St. Clair Co. Jail could have been prevented which were caused by Covid-19 corona virus. However these conditions still exist and they worsen daily, because defendants whom are all aware of jail conditions have turned a blind eye and blatantly disregarded CDC guidelines.

1). Not only can detainees not practice 6' social distancing under normal conditions, but over crowding has futher prohibited any social disrancing.

2). Detainees inform jail physician Dr. Marcowitz and wexford Nurses of Covid-19 related symptoms and are largely ignored and refused Covid-19 testing.

3). Water in cell blocks lock out often, leaving detainees without water to wash their hands for 15 to 30 minutes. Jail superintendant Tammi Grime, Assistant Jail Superintendant Shan Collins and Jail staff refuse to adjust timers on sinks even during a pandemic.

4). Cleaning supplies are generally supplied once during a 12 hour shift, not when needed or to frequently wash surfaces. If detainees put detergent/cleaner in empty shampoo bottles, it is removed during block searches to prevent frequent surface cleaning. Towels used to clean toilets and other surfaces are also removed by all sargeants and correctional officers, whom provide no wipes or alternatives.

31)

5). Sheriff Watson, Jail Superintendant Major Tammi Grime, Assistant Jail Superintendant Shan Collins, Wexfords Dr. Marcowitz, and Jail staff (All Lieutenants, Sargeants, and Correctional officers refuse to give or allow detainees to wear protective face masks, while continually over-crowding cell blocks; creating a "Perfect Storm" for Corona Virus to grow and futher injure plaintiffs and new detainees to the jail. (we were finally issued 1st mask on 1-13-21, 2nd mask issued on 1-22-21, with obsolutely no instructions).

6). Sheriff Watson, Jail Superintendant Major Tammi Grime, Asst. Jail Superintendant Capt. Shan Collins, and their subordinate staff subjected plaintiffs to substantial risk of serious harm caused by exposure to other Covid-19 positive detainees, denial of PPE, lack of virus testing, lack of appropriate cleaning materials, and lack of running water.

7). Sheriff Watson, Jail Superintendant Major Tammi Grime, Asst. Jail Superintendant Shan Collins and their subordinate jail staff instituted a policy, custom, or practice of selling and allowing e-cigarettes at the jail, knowing that they were not only hazardous to the user but also presented a dangerous secondhand smoke hazzard to non-smokers. No effort was made to seperate smokers from non-smokers to protect non-smokers from hazzardous secondhand smoke/vapor! Several plaintiffs who don't smoke are experiencing breathing issues currently.

All of the aforementioned claims amount to violations of plaintiffs 8th and 14th Amendment rights. Sheriff Watson and his staff members are/were aware that selling and allowing detainees to illegally smoke them indoors in communal settings would contribute to secondhand exposure, secondhand vapor aspiration which would ultimately aid in the transmitting and spreading of the Covid-19 Corona Virus at the jail).

Sheriff Watson who willingly enjoys huge profits from the sale of e-cigarettes at the jail to detainees has attempted to distance himself and his staff from any liability derived from e-cigarettes. Plaintiffs contend that he and his staff cannot disclaim away liability to the possibly "tabacco addicted" detainee. Additionally, on the e-cigarette purchase liability waiver, it states that, "Any tampering, modifying, intentional breaking, and or other misuse of your e-cigarette constit as a violation of the St. Clair Co. Jail Detainee Rules and Regulation"

Plaintiffs assert that if improper e-cigarette use is regul-

Sheriff Watson, Then he too holds all liability for proper use to include liability for secondhand smoke/vapor injury, and secondhand smoke/vapor aspiration and subsequent spread of the Covid-19 Corona Virus, Violating Plaintiffs 8th and 14th amendment rights.

36). This litany of 35 detailed claims of violations of established St. Clair Co. Jail policy, Illinois Administrative Code, Civil and Human rights coupled with the defendants systemic obscuring refusal to reply, answer, or resolve grievances brought forth by Plaintiffs, along with documented complaints, witness's, and witness statements prove beyond a shadow of a doubt that Plaintiffs have shown extreme "due diligence" and exhausted all Administrative remedies "available" to them!

## Relief Sought

37). Due to defendants continual failure to act to remedy wrongs, creatings or allowing an unconstitutional policy or custom, deficient management of subordinates, failure to train, supervise, or disipline, inadequate screening of staff: Plaintiff's seek the following relief =

A). Injuctive Relief from current violations/conditions.

B) 68 million in Compensatory Damages.

C). Development of new 3rd party Grievance process oversight.

D). Development of 3rd party Jail Staff management oversight.

E). Installation of Cameras in all jail blind spots.

F). Implementation of 3rd party offsite video recording.

G). Implementation of 3rd party oversight of Food Service Operations.

H). Implementation of Body Cameras for Jail Staff with required recording for entire shift.

I). Develop new Suicide Room Plan and Configuration.

J). Re-implement Physical library and Law Library as Illinois Compiled statutes 701,230 Library mandates with up to date informational, recreational, legal and educational resources.

K). Request independant investigation into jail staffs use of excessive force by U.S. Attorney.

L). Request independent audit of Wexford Health Services practices.

M). Immediately abate jails $50°° booking fee, and refund detainees who paid booking fee from Jan 1, 2019 to present.

N). Re-evaluate Detainee rulebook with detainee input.

O). Mandate by Court Order that Jail abate chronic overcrowding.

P). Request independent audit of maintenance procedures/practices.

Q). Request independent inspection and audit of jail sanitation, to include environmental health, water pipes, water systems, ventilation systems, and toxic black mold in cell blocks.

R). Train Jail staff in regard to HIPPA law violations.

S). Develop a viable jail Covid-19 prevention plan.

T). Court mandate that each detainee have at least 1 hour of out of cell block, out door recreation twice per week.

U). Develop a Detainee Operations and Discipline Panel in which detainees have input in Operations and Discipline decisions.

V). Audit Commissary System and develope system to ensure profits are first used for Detainee recreation activities, and that prices are consistent with local community store prices!

W). Implement plan for 3 free 5 minute phone calls per detainee per week which is commensurate with other local Metropolitan jails.

X). Reduce Jail "site Fees" that jail administration charges Securus so that St. Clair Co. Jail Detainees can enjoy, 5 cents per minute local and long distance phone calls which would be commensurate with other local metropolitan jails, and implement detainee 911 system.

Y). Immediately abate jail staff from illegally diverting and misappropriating commissary funds.

Z). Develop area to ensure Detainees have privacy during visits.

AA). Develop mail plan to limit jail staff members who handle mail.

BB). Abate practice by jail staff of restricting detainee electronic mail privileges when on disciplinary restrictions.

CC). Order Jail staff to abate all retaliatory practices.

DD). Immediately abate "secondary Punishment" which is used by jail staff under "color of Law" and safety obfuscation.

EE). Abate practice of jail staff using segregation for minor rule infractions.

FF). Ensure all disturbance calls or cell extractions etc. are recorded by video camera.

GG). Develop a plan to monitor Jail staff "abuse of discretion" in regard to length of disciplinary punishment.

HH). Develop a viable altercation/fight investigation plan.

II). Install Emergency Call Buttons that detainees can access after lock down.

JJ). Remove cell gates between dayrooms and sleeping quarters in

cell blocks similar to I-Block.

KK). Each Detainee should be issued 2 uniforms, 2 pair of under wear, 2 socks, mattress cover, 2 T-Shirts, Soap, toothbrush, Comb, Deodorant, 1 wash cloth, 1 Bath Towel, Toilet Papers (2 uniforms may be substituted for 1 uniform and 1 pair of gym shorts).

LL). Allow Detainees to purchase personal grooming devices such as battery operated razors, finger nail and toe nail clippers for "Daily" grooming.

MM). Ensure adequate amounts of bleach is used in Laundry.

NN). Ensure adequate grooming tools and sanitation solutions are provided in Barber shop.

OO). Ensure Staff do not "hive" detainees to assault other detainees.

PP). Abate jail staff verbal abuse and assaults of detainees.

QQ). Abate hand Cuffed beatings of detainees by jail staff.

RR). Mandate that Jail Staff attend at minimum bi-annual De-escalation Training.

SS). Immediately abate jails policy that a grievance must be filed within 24 hours after detainee learns of circumstances or conditions which prompted the grievance. Policy should allow 60 days after discovery of incident mirroring Illinois Administrative Code 504.810.

TT). Mandate Jail staff wear masks and other PPE correctly.

UU). Immediately abate illegal practice of allowing "Orange Crush", or any other group to use Pretrial Detainees as training exercises and assault, strip search, use excessive force on them.

vv). Mandate that Jail Administrator and Asst. Jail Administrator perform a weekly walk through of every cell block and address and resolve detainee issues.

ww). Abate Jail staff from violating Prison Rape Elimination Act (PREA)

xx). Mandate that Jail Staff leave reciept(s) for items taken during block searches.

yy). Abate practice of exposing detainees genitals while restrained in restraint chair in barber shop! Allowing all who pass detainee to see his genitals.

zz). Allow detainees 24 hour access to Law Library in all blocks.

AAA). Allow detainees to use dayroom tables after 10:30 pm where feasible to work on legal work privately.

BBB). Stop intentional obscuring/delaying of Complaints/grievances.

CCC). Issue detainees reciepts for outgoing legal mail and regular mail.

DDD). Develop Log book for outgoing/incoming legal mail.

EEE). Order Wexford Health Sources (Services) to report all assaults on detainees by Jail staff to pertinent outside agency.

FFF). Eliminate entrenched "unwritten" policy of seperating detainees who standup peacefully for his/her Constitutionally guaranteed rights.

GGG). Immediately abate policy of labeling detainees "Block-Bosses" when he/she peacefully "unionize" other detainees in regard to poor jail conditions and civil and human rights.

HHH). Establish a policy that ensures meal drink containers (Cambros) are properly cleaned and sanitized after use.

III). Mandate that Jail Administrator and Assistant Jail Administrator perform "Daily" (M-F) a walk through of Max Housing/segregation and "speak with" all detainees housed there and address any potential problems/issues. (Mandate that Jail Administrator and Assistant Jail Administrator only delegate this responsibility to subordinates on Saturday and Sunday or "Extreme" emergencies.)

JJJ). Establish system where detainees can make free telephone calls to St. Clair Co. and local county Public Defenders offices to check on status of his/her case.

KKK). Establish system where detainees can make free telephone calls to paid Attorneys.

LLL). Install privacy ½ doors where detainees defacates.

MMM). Have ventilation system cleaned professionally bi-annually.

NNN). Purchase bed mats that decrease pain of laying on metal bunks.

OOO). Require Wexford Health Services to respond to sick call requests to include Dental issues within 24 hours.

PPP). Allow detainees to purchase Commissary from other vendors ie. Amazon, Tiger.com.

QQQ). Eliminate stalling and 504 Gateway Timeout/nginx/1,14,1 in Law Library Application which adequate block adequate access to the courts.

RRR). Expand Call for Help Services to include "Any" major incident reporting eg. Attempted Rape, Sexual Harrassment, Rape, Assaults, Guard assault of Detainees, Excessive Use of Force, Medical Deprivation,

sss). Mandate that County Board chairman "actively" participate in at minimum annual jail inspections since he/she signs off on inspection and it affects thousands of human beings lives.

ttt). Mandate that jail re-install trust fund ~~function~~ function that informs detainees who put money in their trust fund account.

uuu). Mandate, through new Precedent Order that Pretrial Detainees not charged with murder be released from Pretrial Confinement after 120 days if they can not meet bond requirements. Bond should immediately be reduced to recognizance! Stipulations may include GPS monitoring at County's exspence, which would limit wanton and unneccesary requirements by Prosecutor's and Judiciary for GPS/ Electronic monitoring.

Those charged with murder should be released from Pretrial confinement after 1 year, with GPS/Electronic Monitoring requirement etc.

Any pretrial Detainee mandated to remain on GPS/Electronic monitoring prior to adjudication of case who removes his/her monitoring device intentionally to "Escape Monitoring" or "Escape Custody" shall be subject to further restrictions.

Initial restrictions should not interfere with employment potential ~~employ~~ employment, education or travel within 200 mile radius.

vvv). Order that CDC inspects St. Clair Co. Jail, Interviews detainees in every cell block, Provides report/findings, Mandates proper Covid-19 Quarantine and abatement guidelines. Train jail Personnel in all facets of cleaning/sanitation to include but not limited to proper electro static cleaning.

38). Due to Defendants cu-lpable negligence and blatant disregard of their "Duty of Care", Plaintiffs have shown extreme due diligence and contacted the following in an attempt to get relief from Defendants:

Ⓐ Amnesty International          Ⓑ Attorney Eric Rhein
1 North Casalle St. #825
Chicago, IL, 60602              Belleville, IL.

© Attorney John S. Wallach
  1034 South Brentwood Blvd.
  Suite 1900
  St. Louis, MO. 63117

⑨ U.S. Attorney
  Southern Dist. of Illinois
  9 Executive Dr.
  Fair View Heights, IL.

Ⓔ Attorney Andrew Munwiller
  500 North Broadway
  Suite 1605
  St. Louis, MO. 63102

Ⓕ St. Clair Co. States Attorney
  Jim Gomric
  10 Public Square
  Belleville, IL. 62220

Ⓖ Attorney Cheryl Whitley
  27 East Main St.
  Belleville, IL. 62220

Ⓗ EPA
  Administrator Andrew Wheeler
  2009 Mall St.
  Collinsville, IL, 62234

Ⓘ Avamark Food Services
  6181 Aviation Dr.
  St. Louis, MO. 63134

Ⓙ ACLU
  150 N. Michigan Ave.
  Suite 600
  Chicago, IL. 60601

Ⓚ NAACP
  10540 Southwestern Ave
  Ste 201
  Chicago, IL. 60643

Ⓛ Arch City Defenders
  440 N. 4th St.
  Ste 390
  St. Louis, MO. 63102

Ⓜ U.S. Attorney
  Dept. of Justice
  101 S. Vine St. #226
  Urbana, IL. 61802

Ⓝ ACLU
  906 Olive St.
  St. Louis, Mo. 63101

Ⓞ IDOC Jail and Detention Standards Unit
  1301 Concordia Court
  P.O. Box 19277
  Springfield, IL. 62794-9277

Ⓟ U.S. Dept. of Justice
  Civil Rights Division
  950 Pennsylvania Ave, NW
  Washington DC, 20530-0001

40)

(Q) Senator Dick Durbin
Hart Senate Office Bldg.
2nd St. NE #711
Washington DC, 20002

(R) CDC (Center for Disease Control)
1600 Clifton Road
Atlanta, GA, 30329-4027

(S) Attorney Benjamin Crump
368 W. Huron St.
STE. 2N
Chicago, IL. 60654

(T) Layers Committee for Civil Rights

(U) Governor J.B. Pritzker
State Capitol 207 State House
Springfield, IL, 62706

(V) Call for Help
9400 Lebanon Rd.
East St. Louis, IL. 62203

39)  Case Law

A). Bell v. Wolfish

B). Dewalt v. Carter, 224 F. 3d 607, 618 (7th Cir, 2000)

C). Gibbons v. Washoe, 209 F. 3d 1175, 1188 n 9 (9th Cir. 2002)

D). Wilson v. Williams, 83 F. 3d 870, 875 (7th Cir, 1 1996)

E). Castro v. County of Los Angeles, 797 F. 3d 654, 664 (9th Cir. 2015)

F). Hamm v. Dekalb County, 774 F. 2d 1567, 1574 (11th Cir. 1985)

G). Walter v. Edgar

H). Phillips v. United States

I). Brown v. Plata _ U.S._ 131 S. CT, 1910, 1928, 179 L. Ed. 2d 969 (2011)

J). Lewis v. Casey, 518 U.S. 343, 351, 116 S. ct 2174, 2180, 135 L, Ed. 2d, 606, 618 (1996)

K). United States v. Aycock 15 USC.M.A. 158, 35 CMR. 130 (1964)

L). Weber v. Dell, 804 F. 2d 796, 802

M). Campbell v. Miller 787 F. 2d 217, 225 n. 14 (7th Cir. 1986)

40). Applicable Statutes and Illinois Administrative Code

| Applicable Statutes | Applicable Illinois Administrative Code | |
|---|---|---|
| A). 730 ILCS 125/15 | A). 701.10 | N). 701.150 |
| B). 730 ILCS 125/17 | B). 701.20 | O). 701.160 |
| C). 730 ILCS 125/11 | C). 701.30 | P). 701.170 |
| D). 730 ILCS 125/12 | D). 701.40 | Q). 701.180 |
| E). 730 ILCS 125/18 | E). 701.50 | R). 701.190 |
| F). 730 ILCS 5/3-7-2 | F). 701.70 | S). 701.200 |
| G). 730 ILCS 5/3-7-3 | G). 701.80 | T). 701.210 |
| H). 730 ILCS 125/0.01 | H). 701.90 | U). 701.220 |
| I). 720 ILCS 5/16-18 | I). 701.100 | V). 701.230 |
| | J). 701.110 | W). 701.240 |
| | K). 701.120 | X). 701.250 |
| | L). 701.130 | Y). 701.260 |
| | M). 701.140 | Z). 504.830 |

41). Similar Cases at St. Clair County Jail

Similar Cases to Plaintiffs at St. Clair Co. Jail that highlight the entrenched culture of deprivation of Constitutional, Civil, and Human Rights for several years!

A). George L. Most v. R. Watson  20-CV-493 NJR.
B). Deandre Hickman 468405 v. St. Clair Co. Jail  20-CV-00266-JPG
C). Antrell A. Teen v. St. Clair Co. et al.  17-CV-594-JPG.
D). Scott A. Medford v. Phillip A. McLaurin et al.  17-CV-243-JPG
E). Teen v. Smith  18-CV-568-JPG.
F). Lofton v. St. Clair Co. Jail  13-CV-00823-MJR.
G). Garretta v. McLauren  17-CV-871-JPG.
H). Cotton v. Correctional officer Walters  15-CV-364-JPG.
I). Anthony T. Moore Jr. v. Mathew Scott et al.  17-CV-1153-JPG.
J). Anthony T. Moore Jr. v. Keefe Supply Co. et al.  17-CV-01386-JPG.
K). Antrell Teen v. Officer Charles Germaine  18-CV-1262-RJD.
L). Cortez D. Gillum v. Richard Watson  14-CV-00546-JPG.
M). Ronnie Gully Jr. v. Richard Watson  15-CV-00276-MJR.
N). Antrell Teen v. Sgt. Messey et al.  18-CV-00994-JPG.
O). Shawntez Hairston v. Kenneth McCain  3:07-CV-687-MJR.

P). Timothy J. Headrick v. Thomas Trice et.al. 14-CV-293-MJR.
Q). Anthony T. Moore v. John Doe#1 et.al. 18-CV-01047-JPG.
R). Dustin Middendorf v. Phillip McLaurin et.al. 17-CV-00538
S). Antrell Teen v. John Doe #2 Supervisor et.al. 18-CV-992-JPG.
T). Scott A. Medford v. C.O. Walt et.al. 17-CV-1015-JPG.
U). Antrell Teen v. Sgt. Nichols 18-CV-997-J.PG.
V). Antrell Teen v. Kenny 17-CV-0918-JPG.

42) Plaintiffs assert that Bell v. Wolfish made it clear that the most important difference between pretrial detainees and convicted prisoners is that pretrial detainees cannot be punished! Punishing a pretrial detainee who has been convicted of no crime would violate the Due Process clauses of the United States Constitution.

Plaintiffs filed numerous complaints/grievances seeking relief from the litany of violations by defendants listed in this complaint.

Defendants subsequently discarded, obscured, poorly answered, or flat-out refused to address Plaintiffs complaints/grievances.

Defendants followed up Non-answered, discarding, and obscuring of Grievance process with systemically entrenched retaliation. This retaliation was designed, enacted, and enforced to deter 1st Amendment activity in the future. Plaintiffs 1st Amendment activity was "atleast a motivating factor" in the Defendants decision to take retaliatory action.

43) Defendants violations herein collectively rose to Cruel and unusual Punishment of Pretrial Detainees!

44) The balance of the equities favors the Plaintiffs in this case, in that the costs of treating Pretrial Detainees humanely are greatly out weighed by the damage physically and mentally that Plaintiffs and others are suffering from said Defendants refusals to act.

45) Public policy will be furthered by requiring Defendants to comply with their legal obligations imposed by the 14th Amendment and the maintenance of minimally humane Condition for detainees, including Plaintiffs, at the St. Clair Co. Jail.

46) Wherefore, Plaintiffs pray that the Court enter judgement against Defendants in the amount of 68 million U.S. Dollars in compensatory damages and that the Court enter such other futher relief as is just and proper.

(44)

| Detainee | Detainee | Detainee | Jail staff | |
|---|---|---|---|---|
| 1). Antrell A. Teen | 38). John Hitch | 75). David Withrow | Nurse Ashley | |
| 2). Anthony T. Moore Jr. | 39). Devontay Brown | 76). Unknown Guy in I Block on 8-13-19 | Nurse Jennifer | |
| 3). Tracy Rhine | 40). Eric Richardson | 77). Michael Anderson | Dr. Larson | |
| 4). Shawntez Hairston | 41). Ron Huckabee | 78). Christopher McNeal | C.O. Burns | |
| 5). Scott Medford | 42). DeAngelo Johnson | 79). Shawn LaFollotte | C.O. Miller | |
| 6). Adrian Buford Wade | 43). Marshell Sproks | 80). Todd Willis | C.O. Becker | |
| 7). Dustin Middendorf | 44). Pred Cooks | 81). Steven Marshall | C.O. Hay | |
| 8). Orlando Lofton | 45). Glenn Cross | 82). Roderick Whittaker | C.O. Anderson | |
| 9). Greg Dunigan | 46). Darrius Blue | 83). Christopher Warlock | C.O. Poudson | |
| 10). Carlos Garrett | 47). Cedre Ross | 84). Leonard Warren | C.O. Ripperda | |
| 11). Leonard Hadley | 48). Neil Williams | 85). Amos Winters | C.O. Stroud | |
| 12). Gilberto Deleon Balderas | 49). Rob Sullivan | 86). Terrell Amerson | C.O. Gilmore | |
| 13). Timothy J. Headrick | 50). Dakota Monroe | 87). Randall Putman | C.O. Riley | |
| 14). Leonard C. Cotton Sr. | 51). Michael Mosely | 88). Shone Kitterman | C.O. Johnson | |
| 15). Cortez D. Gillum | 52). Gloyd Stoll | 89). George L. Most | Kitchen Supervisor Floyd | |
| 16). Ronnie Gully | 53). Dwayne Camden | 90). Deandre Hickman | Counselor Janelle | |
| 17). Gary A. Lavite | 54). Kendall Collins | 91). Timothy J. Headrick | C.O. Fulton | |
| 18). Tim Turner | 55). Brandon Tarr | 92). Victor Hopkins | C.O. Harris | |
| 19). Caylon Harris | 56). David Cole | 93). Morton Licken | C.O. Harmon | |
| 20). Michael Bennett | 57). Damian Hurston | 94). Randy Haley | C.O. Cruz | |
| 21). Kenneth Omotola | 58). Cortez Wilson | 95). Brandon Thrower | Nurse Yvonne | |
| 22). Luisa Mendoza | 59). Adam Jones | 96). Call for Help | Nurse Patrice | |
| 23). Greenley Hillman | 60). Unknown 1st name Henderson Lower Level D 3/2019 | 97). Josh Householder | Nurse Patrica | |
| 24). William Warner | 61). Patrick McDonald | 98). Lloyd Tutor | C.O. Rivera | |
| 25). Charlie Carter | 62). Timothy Eastman | 99). Terrence Spencer | C.O. Funk | |
| 26). Andrew Wigfall | 63). Sylvester Mull | 100). Darrick Adams | C.O. Mosley | |
| 27). Brion Harris | 64). Scott Brown | 101). Sean Vahltorn | C.O. Bean | |
| 28). Christopher Knick | 65). Damian Vasquez | 102). Barney Donohue | C.O. Nichols | |
| 29). Jeffery Moody | 66). James Savage | 103). Erik Saveson | Nurse Morris | |
| 30). Devon Nellums | 67). Nicholas Wann | 104). Kourtney Jackson | Nurse Lastella | |
| 31). Alex Garth | 68). Jeremy Ward | 105). Bobby McKay | C.O. Triplett | |
| 32). Andy Huber | 69). Unknown guy in Midtown "A" March 2019 | 106). Edward Prater | Nurse Debra DuBose | |
| 33). Jose A. Mejia-Gutierrez | 70). Charles Holt | 107). Frankie Potter | Nurse Sherri | |
| 34). Randy Miller | 71). Delano Martin | 108). Norman Tammons | Nurse Shannon | |
| 35). Tyrone Miller Jr. | 72). Christopher Wagner | 109). Terrence Wright | C.O. Carter | |
| 36). Henry Patterson | 73). William Brandon | | | |
| 37). Rich Williamson | 74). Fazll Imdad | | | |

48). Tort Actions in State Courts:

Plaintiffs can file a State Tort action regardless of whether Defendants violated any of their Constitutional Rights and regardless of whether Plaintiffs are also filing a Section 1983 Federal Lawsuit.

Plaintiffs may file a Tort Action under State law in State court against "Anyone" who deliberately or carelessly injured them, or damaged or destroyed their property. In the numerous claims brought forth in this lawsuit, defendants were both negligent and intentional in causing injury and damage to Plaintiffs.

These aforementioned numerous claims coupled with defendants systemically entrenched, surreptitious, deprival of pretrial indigent detainees communication with Legal Aid, Public Defenders, Hired Attorneys, and banning of Yellow Page phone books leave said detainees suffering from Cruel and unusual punishment as Pretrial Detainees, Pretrial detainees / Pretrial restraint, including conditions on liberty, may not improperly hinder trial preparation. United States v. Aycock 15 U.S.C.M.A. 158, 35 C.M.R. 130 (1964) United States v. Wysong, 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958)

Maine v. Moulten found that counsel is especially important during the period before trial, when Pretrial Detainees are kept from effectively communicating with their attorneys, "The ultimate fairness of their eventual trial can be compromised.

49). As of 1-16-2021 Plaintiffs injuries have ripened even further as they have been placed on Covid-19 quarantine again due to some testing positive and others exhibiting symptoms of having the Corona virus, Sheriff Watson and other defendants lack of Covid-19 spread prevention plan, poor handling policy, coupled with defendants failure to properly screen and test employees, failed plan to isolate, guards and now detainees bringing Covid-19 into the facility, Asymptomatic spread, gross negligence have placed pretrial detainees at an extreme risk of harm.

Defendants gross under-reporting, undercounting, blatant disregard of their "Duty to Care", covert releasing of Covid-19 positive detainees from St. Clair Co. Jail to hide "real" Covid-19 numbers, has increased morbidity and mortality numbers in St. Clair Co.

This has moved from egregious intentional negligence

to an outright criminal corruption scandal! Thus, I am
additionally referring these numerous claims to the U.S.
Department of Justice.

Plaintiffs pray this Honorable Court will act expeditiously
to provide relief!


_Cameron Belk Sr._                    _Christopher McNeal Sr._
Cameron Belk Sr.                      Chris McNeal Sr.
Co-Representative                     Co-Representative
1-29-2021                             1-29-2021

neopost
02/04/202
USPOST

CERTIFIED MAIL

7019 0701

7019 0700 0001 4287 7744

Cimmoron Polk Sr. #41887
St Clair County Jail
200 N. 5th Street
Belleville, Il. 62220

Clerk
United States District Court
Southern District
750 Missouri Ave.
East St. Louis, Illinois 62201

2

Legal Mail

RECEIVED

FEB - 9 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE