IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMERON BELK, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-142-DWD |
| | ) |
| DR. DAVID MARCOWITZ and DR. VIPIN SHAH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Cameron Belk, Sr. brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights allegedly occurring when he was a pre-trial detainee at St. Clair County Justice Center. (Docs. 203 and 207). Defendants Dr. David Marcowitz and Dr. Vipin Shah[1] have filed a motion for summary judgment pursuant to

---

[1] The original complaint included 24 plaintiffs. (Doc. 1). On June 3, 2021, the Court dismissed 22 of the named plaintiffs after they failed to comply with a court order directing them to file a signed complaint and to notify the court of their intent to proceed. (Doc. 133). Plaintiff Christopher McNeal's claims were dismissed with prejudice and a strike was assessed on January 3, 2022, leaving only Plaintiff Cameron Belk's claims. (Doc. 182). Defendants C/O Herdon, Lt. Penier, Securus Technologies, Sgt. Messy, Sgt. Scott, Sgt. Moore, Sgt. Green, C/O Kemfer, C/O Brown, C/O Liebig, C/O Smith, C/O Everette, Salmartis Owens, B. Johnson, C/O Thorpe, C/O Futrell, C/O Sabo, C/O Reed, C/O Wilburn, C/O Lazunta, C/O Knyff, C/O Zerohebak, T. Johnson, Sgt. Chambers, C/O J.P., Mark Kern, C/O Stroud, Nurse Sherri, Nurse Shannon, Nurse Ashley, Nurse Yvonne, Nurse Jennifer, Nurse Morris, C/O Casey, C/O Humphries, Janice MacCarron, Janelle Bloodworth, Floyd Higgins, C/O Garner, C/O Walt, Mike Ripperda, C/O Cruz, Judge O'Gara, Judge Haida, C/O Fordson, Nurse Kate, C/O Rivera, Debra Hale, Nurse Lagtolla, C/O Becker, C/O Briggs, and C/O Germaine were dismissed from the case on August 27, 2021 because they were not named in the Amended Complaint. (Doc. 172). Defendants St. Clair County Jail, Keefe Group, Lt. Struberg, Sgt. Nichols, and Trinity Commissary were dismissed from the case on May 18, 2020 because they were not named in the subsequent Amended Complaint. (Doc. 199). Defendants Richard Watson, Marcie Warner, Dr. Lawson, Aramark Correctional Services, Jim Gomric, Edwin R. Bowen, Melody Murry, Mary Robinson-Davis, St. Clair Co. Health Inspector, St. Clair Co. Health Dept., Debi Gaetzke, Dr. Shaw, and C/O Simms were dismissed on December 19, 2022 and December 21, 2022 because they were not named in the Second Amended Complaint. (Doc. 203). The claims as to Defendants Tammi Grime, Shan Collins, and Wexford Health Sources, Inc. were dismissed for failure to state a claim at screening. (Doc. 207). The claims against Defendant Rodney Wilson were dismissed without prejudice after Plaintiff did not elect to sever them into a separate action. (Doc. 229). The only remaining claims are those directed against Defendants David Marcowitz and Vipin Shah.

Federal Rule of Civil Procedure 56. (Docs. 249 and 250). Plaintiff has filed a response (Doc. 253), and Defendants have filed a reply (Doc. 254).[2] The claims for which summary judgment is sought are the only claims remaining in this case – Counts 1 and 4.

For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment.

## I.   BACKGROUND

Plaintiff Cameron Belk, Sr. filed this action under 42 U.S.C. § 1983 alleging inadequate medical care and retaliation while he was a pretrial detainee at the St. Clair County Jail. In his Third Amended Complaint (Doc. 203), Plaintiff claims that Dr. David Marcowitz (who treated him from February 18, 2020, to approximately September 2021) and Dr. Vipin Shah (who treated him from October 4, 2021, onward) provided constitutionally deficient care for his post-2017 stroke-related conditions. He further alleges that Dr. Shah was deliberately indifferent to his serious medical needs in connection with a right-calf wound, which he alleges was a MRSA infection, and COVID-19 exposure. Plaintiff also asserts that Dr. Shah retaliated against him by moving him to isolation after he filed grievances complaining that Dr. Shah was not following MRSA protocols.

Although the Third Amended Complaint asserted additional claims against other defendants, those claims have been resolved. The only claims that remain pending are:

---

[2] Plaintiff also filed a sur-reply. (Doc. 255). The Local Rules of this Court provide that "[u]nder no circumstances will sur-reply briefs be accepted" and prior to filing a supplement, a party must first seek leave of the court. SDIL-LR 7.1(a)(4),(6). Because sur-reply briefs are prohibited and Plaintiff did not seek leave to file a supplemental pleading, the Court will not consider Plaintiff's sur-reply.

    Claim 1:    Fourteenth Amendment deliberate indifference to serious medical needs against Dr. Marcowitz and Dr. Shah for their handling of Plaintiff's stroke-related health issues, and against Dr. Shah for his alleged contraction of MRSA and for COVID-19 exposure; and

    Claim 4:    First Amendment retaliation against Dr. Shah for preventing access to medical care.

## II.    LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).

The moving party bears the initial burden of demonstrating why no trial is necessary. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). It may do so either by presenting affirmative evidence negating an essential element of the nonmovant's claim or by showing an absence of evidence to support that claim. *Modrowski*, 712 F.3d at 1169; *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016).

Once the movant meets this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, supported by admissible evidence, showing a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322–24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Conclusory allegations, unsupported by specific facts" are insufficient. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party must produce

evidence establishing each element on which it bears the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995).

In ruling on the motion, the Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party and resolves any doubts in its favor. *Hansen v. Fincantieri Marine Grp.*, 763 F.3d 832, 836 (7th Cir. 2014); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Bunn*, 753 F.3d at 681. The Court does not weigh evidence, resolve credibility issues, choose between competing inferences, or decide the truth of the matters presented. *Anderson*, 477 U.S. at 248; *Hansen*, 763 F.3d at 836.

A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008).

### III.   PLAINTIFF'S RESPONSE[3]

Plaintiff has filed a Response to Defendants' Motion for Summary Judgment that includes a Statement of Additional Material Facts and an Affidavit. (Doc. 253). Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff's Statement of Additional Material Facts, and Plaintiff's Affidavit fail to create any genuine dispute of material fact under Federal Rule of Civil Procedure 56. Plaintiff's Response and Statement of Additional Material Facts consist of general, unsupported assertions without citation to admissible record evidence, as required by Rule 56(c). Conclusory statements and bald

---

[3] Plaintiff's response fails to comply with the procedural requirements of SDIL Local Rule 56.1. Although SDIL Local Rule 56.1 applies equally to pro se litigants, the Court, in the exercise of its discretion, affords Plaintiff some leniency for his noncompliance with the Rule because Defendants' Rule 56 notice did not address the requirements unique to Local Rule 56.1. *See Black v. Dearmond*, No. 21-CV-1118-DWD, 2025 WL 370888 (S.D. Ill. Feb. 3, 2025).

allegations are insufficient to defeat summary judgment. *See Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018); *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). Because Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), none of the facts asserted in his filings create a triable issue.

Plaintiff's Affidavit likewise creates no genuine dispute. While a non-movant's affidavit based on personal knowledge may be considered, the vast majority of the affidavit consists of the types of statements the Seventh Circuit has held are inadmissible or insufficient at summary judgment, including legal conclusions, conclusory assertions lacking any specific concrete facts or dates, lay medical opinions on diagnosis and causation that Plaintiff is not qualified to render, and pure speculation regarding Defendants' state of mind and retaliatory motive. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014); *Mills v. First Fed. Sav. & Loan* Ass'n, 83 F.3d 833, 842-43 (7th Cir. 1996); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); *Holton v. Hamblin*, No. 11-CV-246-SLC, 2013 WL 6230520, at *9 (W.D. Wis. Dec. 2, 2013). The only portions of the affidavit grounded in Plaintiff's personal knowledge (i.e., that he submitted requests and grievances and kept a personal log pertaining to his medical care) do not contradict any of the specific, record-supported facts in Defendants' Statement of Material Facts regarding the care provided, the dates of visits, the orders issued, the test results, or the referrals made.

Moreover, Plaintiff's "personal log," attached for the first time to his summary judgment response, cannot be considered. Defendants expressly requested any diaries, calendars, chronologies, or similar documents in which Plaintiff recorded his interactions with Defendants, symptoms, or alleged delays in care, yet Plaintiff withheld this log on a blanket assertion of 'work product privilege.' (Docs. 254-1 and 254-2). Having withheld a plainly responsive document, Plaintiff was required not only to expressly assert any claim of protection, but also to describe the nature of the withheld material in a manner that would permit Defendants to assess that claim. Further, if he later intended to rely on the document, he was required to timely supplement his discovery response. FED. R. CIV. P. 26(b)(5)(A), 26(e). He failed to do so.

Rule 37(c)(1) therefore bars Plaintiff from using the log "to supply evidence on a motion" unless his failure to disclose was substantially justified or harmless. It was neither. The log purports to be a contemporaneous two-year account of the events at issue,[4] and withholding it during discovery deprived Defendants of any fair opportunity to examine it before dispositive briefing. As such, the Court will strike Plaintiff's "personal log." See Mannoia v. Farrow, 476 F.3d 453, 456-57 (7th Cir. 2007).[5]

---

[4] Plaintiff describes it as "a personal medical log, documenting "daily harm and lack of treatment from Defendants." (Doc. 253, pg. 5).

[5] The Court further notes that Plaintiff's "personal log" consists of approximately 150 pages of handwritten notes, many of which are difficult to decipher. In response to summary judgment, Plaintiff refers to the log only generally, asserting that it reflects "daily harm and lack of treatment from Defendants," but he does not identify which particular entries support which claims, nor does he cite any specific page or portion of the exhibit. That is not enough to create a genuine dispute of material fact. Even setting aside the disclosure problem, the log does not aid Plaintiff in opposing summary judgment because the Court is not required to sift through a lengthy, partially illegible exhibit in search of evidence that Plaintiff himself has failed to pinpoint. See Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

To the extent that Plaintiff has not presented admissible evidence to dispute Defendants' statement of undisputed material facts, those material facts, as long as they are supported by evidence in the record, shall be accepted as true.

### IV.    FACTUAL RECORD

Plaintiff suffered a stroke in June 2017, prior to his detention. Before incarceration, he was treated by neurologist Dr. Alexander Carter, underwent physical and occupational therapy, and was prescribed medications including Hydrochlorothiazide 50 mg and Losartan 100 mg. After approximately two months, Plaintiff's physical and occupational therapy were discontinued, and he was instructed to continue with a home exercise program.

Plaintiff was booked into the jail on February 8, 2019. At the time of booking, he was taking Hydrochlorothiazide (HCTZ) 50 mg and Losartan 100 mg. On October 11, 2019, Plaintiff was seen by Dr. Carter, his pre-detainment treating neurologist, who assessed that Plaintiff had mild right-side weakness and right-side sensory changes and spasms that were expected after a stroke on the left side of the brain, while noting he could not say for sure whether there had been any new strokes in the same area because symptoms can sometimes change even without a new stroke.

Dr. Marcowitz first saw Plaintiff on February 18, 2020, when Plaintiff was on the MD call line to discuss physical therapy. On examination, Dr. Marcowitz charted no facial weakness, regular heart rate and rhythm, lungs clear to auscultation, mild right-side weakness, and a normal gait. He increased Plaintiff's Amlodipine to 10 mg daily and directed Plaintiff to continue with his home exercise program.

Over the following months, Dr. Marcowitz regularly evaluated Plaintiff for hypertension, edema, dietary complaints, constipation, blurred or double vision, leg spasms, shortness of breath, chest pain, cough, and post-COVID-19 symptoms. He adjusted medications as needed, including diuretics, submitted non-formulary requests for Baclofen and Gabapentin consistent with neurologist recommendations, ordered diagnostic testing and laboratory work, referred Plaintiff for physical therapy, neurology, and cardiology follow-up, and implemented specialist recommendations, including aspirin, additional testing, and cardiology referral.

The record reflects repeated neurological examinations showing no new deficits beyond Plaintiff's baseline post-stroke symptoms, although Dr. Carter had noted in October 2019 that he could not rule out the possibility of a new stroke. The diagnostic testing ordered during Dr. Marcowitz's care included chest x-rays showing no acute cardiopulmonary disease, MRI/MRA showing no conclusive evidence of a new intracranial process, venous doppler showing no evidence of acute DVT, normal echocardiogram and stress test results, and cardiac catheterization showing no significant coronary artery disease.

The record also reflects a July 2020 assessment of congestive heart failure, August 2020 COVID-19 infection, routine blood-pressure monitoring, and that Plaintiff at times refused examinations, laboratory testing, or treatment, while some outside appointments were delayed because of COVID-19 protocols.

A physical therapist evaluated Plaintiff in July 2020 and provided a home exercise program, and between July 2020 and September 2021 Plaintiff was given access to the law

library to perform those exercises. Dr. Marcowitz last saw Plaintiff on August 18, 2021, when they discussed Plaintiff's scheduled cardiology follow-up.

Dr. Shah assumed Plaintiff's care on October 4, 2021. He addressed Plaintiff's complaints relating to stroke issues, blood pressure, and leg swelling by prescribing Norvasc 10 mg, referring Plaintiff to physical therapy, ordering compression stockings, and directing frequent blood-pressure checks.

During Dr. Shah's care, Plaintiff continued to receive medication renewals and adjustments, treatment for congestion, leg and knee pain, and care for a right lower calf wound. In January and February 2022, Plaintiff was treated by nursing staff for the wound, and Dr. Shah prescribed Septra for two weeks and Spironolactone, later adjusting the Spironolactone dosage after Plaintiff complained of dizziness. After wound culture results were reviewed on February 8, 2022, Dr. Shah ordered Levaquin. Plaintiff repeatedly refused to sign a release of responsibility for that medication, and on February 12, 2022, nursing staff advised him that he needed to begin antibiotic therapy and gave him the choice of taking Levaquin or being moved to isolation to receive Rocephin.

On February 13, 2022, Plaintiff agreed to start Rocephin and was moved to isolation. The wound later healed, and wound care was discontinued. Dr. Shah also addressed Plaintiff's orthotic and mobility complaints, indicating Plaintiff could use a cane, though jail staff later determined for security reasons that he should instead be transported by wheelchair. Dr. Shah continued Plaintiff's care through cardiology and neurology follow-ups, x-rays, ultrasound testing with negative results, referrals to

physical and occupational therapy, neurology, and foot and ankle specialists, provision of orthotics, and later referrals to optometry and ENT.

In March 2022, x-rays showed mild osteoarthritis of the right hip and a normal right knee, and in April 2022 Dr. Shah noted Plaintiff's wound had healed and advised exercise. Plaintiff was later approved for physical and occupational therapy once a week for eight weeks, and Dr. Shah last saw Plaintiff on December 18, 2022, when he advised Plaintiff that daily therapy was not approved and encouraged him to continue the exercises recommended by therapy. Throughout Dr. Shah's care, Plaintiff's blood pressure was routinely monitored.

## V. DISCUSSION

### A. Claim 1 – Deliberate Indifference to Serious Medical Needs

Pretrial detainees' claims of inadequate medical care arise under the Due Process Clause of the Fourteenth Amendment and are governed by an objective reasonableness standard, not the subjective deliberate indifference standard that applies to convicted prisoners under the Eighth Amendment. *Kingsley v. Hendrickson,* 576 U.S. 389 (2015); *James v. Hale,* 959 F.3d 307, 318 (7th Cir. 2020); *Hardeman v. Curran,* 933 F.3d 816, 823 (7th Cir. 2019); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

To survive summary judgment, a plaintiff must show that he was suffering from an objectively serious medical condition, that Defendants—acting "purposefully, knowingly, or perhaps even recklessly," as opposed to negligently—responded or failed to respond in a manner that was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). The objective-reasonableness standard requires the Court to "focus

on the totality of facts and circumstances" in the case and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McGee*, 55 F.4th at 569 (quoting *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018)). The plaintiff bears the burden of demonstrating objective unreasonableness. *James*, 959 F.3d at 318.

Plaintiff alleges Dr. Marcowitz and Dr. Shah were deliberately indifferent for the care provided from February of 2020 to date. Specifically, Plaintiff claims Drs. Marcowitz and Shah are subject to liability for their handling of Plaintiff's stroke related health issues, and that Dr. Shah is subject to liability for Plaintiff's alleged contraction of MRSA and for Covid-19 exposure. As to Plaintiff's stroke related health issues, Plaintiff's core allegation seems to be that, "[d]espite repeated requests and obvious symptoms", Defendants failed to timely diagnose or provide adequate care, refused to authorize or provide essential physical and occupational therapy, ignored or delayed access to specialists and rehabilitative services, and thereby caused Plaintiff permanent disabilities.

The parties agree that Plaintiff's post-stroke condition, alleged MRSA wound, and COVID-19 exposure constitute objectively serious medical conditions. Accordingly, the only issue before the Court is whether Defendants' responses to Plaintiff's conditions were objectively unreasonable.

1. **Dr. Marcowitz**

On the record before the Court, no reasonable jury could conclude that Dr. Marcowitz's treatment of Plaintiff was objectively unreasonable. From February 18, 2020,

through August 18, 2021, Dr. Marcowitz saw Plaintiff on numerous occasions for complaints that included hypertension, edema, dietary issues, constipation, blurred or double vision, leg spasms, shortness of breath, chest pain, cough, and post-COVID symptoms. When Plaintiff cooperated with the encounter, Dr. Marcowitz examined him, monitored his condition, and adjusted treatment in response to his complaints. He increased Plaintiff's Amlodipine to 10 mg daily, adjusted diuretic therapy as clinically indicated, imposed fluid and sodium restrictions when appropriate, ordered and reviewed diagnostic testing and laboratory work, submitted non-formulary requests for Baclofen and Gabapentin consistent with neurology recommendations, referred Plaintiff for physical therapy, neurology, and cardiology follow-up, and implemented outside specialists' recommendations, including aspirin, additional testing, and cardiology referral.

The diagnostic testing obtained during Dr. Marcowitz's care further confirms the reasonableness of his response. Chest x-rays showed no acute cardiopulmonary disease. MRI and MRA imaging revealed no conclusive evidence of a new intracranial process. A venous Doppler showed no evidence of acute DVT. An echocardiogram and stress test were normal, and cardiac catheterization showed no significant coronary artery disease. The record also reflects that Dr. Marcowitz assessed Plaintiff with congestive heart failure in July 2020, continued to monitor Plaintiff's edema and blood pressure, and responded to Plaintiff's evolving complaints with follow-up visits, medication adjustments, and further testing. When Plaintiff tested positive for COVID-19 in August 2020, Dr. Marcowitz assessed him as stable, noted his history of congestive heart failure and

diuretic use, ordered CBC, BMP, and BNP testing, and continued fluid and sodium restrictions. Earlier, when Plaintiff complained of cough in July 2020, chest x-rays were ordered and showed no acute disease.

The record likewise refutes Plaintiff's assertion that Dr. Marcowitz denied him therapy or ignored his stroke-related complaints. Dr. Marcowitz submitted a referral for physical therapy, and Plaintiff was evaluated by physical therapy in July 2020 and provided a home exercise program. Between July 2020 and September 2021, Plaintiff was given access to the law library to perform those exercises. Dr. Marcowitz also facilitated neurology follow-up, submitted requests for MRI/MRA at the neurologist's direction, approved aspirin the same day it was recommended by neurology, and referred Plaintiff to cardiology when Plaintiff later complained of chest pain, shortness of breath, and weight gain. This is not a record of ignored symptoms or withheld care; it is a record of ongoing treatment, repeated follow-up, specialist referrals, and implementation of outside recommendations.

Nor does Plaintiff identify evidence from which a reasonable jury could conclude that Dr. Marcowitz's decisions represented such a substantial departure from accepted professional judgment as to be objectively unreasonable. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) (persistent and reasoned medical attention is inconsistent with objectively unreasonable care); *see also Vogelsberg v. Kim*, No. 20-2926, 2022 WL 1154767, at *3 (7th Cir. Apr. 19, 2022). Plaintiff was not constitutionally entitled to demand immediate off-site therapy on his preferred schedule or specialist appointments without regard to COVID-related rescheduling. *See Smith v. Kapotas*, 2020 WL 553619, at *5 (N.D.

Ill. 2020) ("[A] pretrial detainee is not entitled to the treatment of his choice, nor may he state a constitutional claim merely by second-guessing a medical provider's professional judgment…."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("Surely Burton would have preferred Vicodin to Ultram, or to have seen a doctor who would have prescribed narcotics, but detainees are not entitled to receive 'unqualified access to healthcare.'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (applying the Fourteenth Amendment before *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

At most, Plaintiff disagrees with the course of care provided, but such disagreement does not establish objectively unreasonable medical treatment. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017); *McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8 (N.D. Ill. July 27, 2021).

   2. **Dr. Shah**

### *Stroke-Related Care*

Plaintiff asserts the same generalized accusations against Dr. Shah that he raises against Dr. Marcowitz. Namely, Dr. Shah refused essential therapies, ignored symptoms, and delayed specialist or rehabilitative care, thereby causing permanent disabilities. The undisputed record does not support those assertions. Dr. Shah assumed Plaintiff's care on October 4, 2021, and promptly addressed Plaintiff's complaints regarding stroke-related issues, blood pressure, and leg swelling by prescribing Norvasc 10 mg daily, referring Plaintiff to physical therapy, ordering compression stockings, and directing that Plaintiff's blood pressure be checked multiple times per week.

Over the following months, Dr. Shah continued to monitor Plaintiff, renew and adjust medications, and respond to intervening complaints, including congestion, knee and leg pain, dizziness related to Spironolactone, axillary swelling, and orthotic concerns. He also ordered additional diagnostic testing, including x-rays, laboratory work, and ultrasound imaging; referred Plaintiff for neurology follow-up, physical therapy, occupational therapy, and foot-and-ankle evaluation; later referred Plaintiff to optometry and ENT; and entered orders implementing neurologist recommendations, including increases to Baclofen and Gabapentin. Plaintiff was given orthotics in October 2022, and by November 2022 Dr. Shah had submitted a referral request for physical and occupational therapy once a week for eight weeks, which he later advised Plaintiff had been approved.

The record also reflects that Dr. Shah responded to Plaintiff's mobility-related concerns. In October 2021, Dr. Shah indicated Plaintiff could use a cane. When nursing staff later consulted jail security personnel, however, it was determined for safety and security reasons that Plaintiff should instead be transported by wheelchair. That decision does not show objectively unreasonable medical care by Dr. Shah. Nor does the record support Plaintiff's claim that Dr. Shah ignored his condition generally. Throughout Dr. Shah's care, Plaintiff's blood pressure was routinely monitored, specialists continued to follow Plaintiff, and Dr. Shah repeatedly responded to Plaintiff's complaints with examination, medication management, referrals, testing, and follow-up care. His final visit on December 18, 2022, reflects that he advised Plaintiff he had been approved for weekly therapy and encouraged him to continue the exercises recommended by therapy.

This course of treatment reflects persistent and reasoned medical attention, not objectively unreasonable care. See *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019); *see also Vogelsberg v. Kim*, No. 20-2926, 2022 WL 1154767, at *3 (7th Cir. Apr. 19, 2022). At bottom, Plaintiff's assertions amount to disagreement with Dr. Shah's professional judgment and dissatisfaction with the pace or form of treatment he received, which is insufficient to create a triable constitutional claim. See *Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017); *McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8 (N.D. Ill. July 27, 2021).

*Wound Care.*

Plaintiff alleges that Dr. Shah caused him to contract what Plaintiff characterizes as a MRSA infection by failing to manage another detainee's infection and/or by negligently failing to follow infection protocol. (Docs. 203, 207, 253). But Plaintiff cites no record evidence establishing that his wound was MRSA, much less that Dr. Shah caused it. The undisputed record contains no evidence linking Dr. Shah to the origin of Plaintiff's wound or any alleged infection, and Plaintiff's speculation on that point cannot defeat summary judgment. See *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

To the extent Plaintiff instead claims that Dr. Shah was deliberately indifferent in treating the wound once it arose, the record forecloses that theory as well. Once the right-calf wound came to Dr. Shah's attention, Plaintiff received prompt and ongoing care. Nursing staff provided wound care in January and February 2022. Dr. Shah prescribed Septra for two weeks together with Spironolactone. After review of the wound-culture results, he ordered the non-formulary antibiotic Levaquin. When Plaintiff repeatedly

refused to sign the release of responsibility for Levaquin, nursing staff advised him that he needed to begin antibiotic therapy and gave him the option of taking Levaquin or being moved to isolation to receive injectable Rocephin. Plaintiff agreed to Rocephin the next day, was moved to isolation, and the wound later healed, after which wound care was discontinued. No reasonable jury could find on this record that Dr. Shah's response was objectively unreasonable.

### *COVID-19 Exposure.*

Plaintiff also claims Dr. Shah was responsible for his contraction of COVID-19 in December 2021 and again in August 2022. But Plaintiff was housed in general population at the time of both infections, and he identifies no evidence linking Dr. Shah to either exposure or infection. On this record, that claim rests on speculation rather than evidence and cannot survive summary judgment. *See Vogelsberg v. Kim*, No. 20-2926, 2022 WL 1154767, at *3 (7th Cir. Apr. 19, 2022); *McCoy*, 341 F.3d at 604.

In sum, the undisputed record shows that Dr. Shah provided ongoing, responsive, and medically appropriate care for Plaintiff's stroke-related conditions, promptly and effectively treated the calf wound once discovered, and had no involvement in Plaintiff's COVID-19 infections. No reasonable jury could conclude that Dr. Shah's conduct was objectively unreasonable under the totality of the circumstances. Dr. Shah is therefore entitled to summary judgment on all of Plaintiff's deliberate indifference claims against him.

**B. Claim 4 - First Amendment retaliation against Dr. Shah**

To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) the protected activity was at least a motivating factor in the defendant's decision to impose the deprivation. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Filing grievances about jail conditions is protected First Amendment activity. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

Plaintiff alleges that Dr. Shah retaliated against him by ordering his placement in isolation after Plaintiff filed grievances asserting that Dr. Shah failed to follow infection-control protocols. But Plaintiff identifies no evidence supporting that theory. The undisputed record shows that, after Plaintiff repeatedly declined to begin the prescribed oral antibiotic Levaquin, nursing staff advised him on February 12, 2022, that he needed to start antibiotic treatment and gave him the option of taking Levaquin or being moved to isolation to receive injectable Rocephin. Plaintiff agreed the next day to begin Rocephin and be moved to isolation. Thus, the record shows that Plaintiff's placement in isolation was tied to the administration of alternative antibiotic treatment, not to any protected activity. Plaintiff offers no evidence that Dr. Shah ordered or caused the isolation placement because Plaintiff filed grievances. Without evidence that Plaintiff's protected activity was a motivating factor in the decision, no reasonable jury could find retaliation. Dr. Shah is therefore entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## VI. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment filed by Defendants David Marcowitz and Vipin Shah (Doc. 249) is **GRANTED**. The claims against David Marcowitz and Vipin Shah are **DISMISSED** with Prejudice. The Clerk is **DIRECTED** to close the case and to enter judgment accordingly.

**SO ORDERED.**

Dated: February 27, 2026

*s/David W. Dugan*
DAVID W. DUGAN
United States District Judge